PATRICIA ANN JOHNSTON, as Guardian Ad Litem for DONNA SUZANNE JOHNSTON, Plaintiff–Appellant, v. KFC NATIONAL MANAGEMENT COMPANY, a Delaware Corporation, ANDREA CUI, JAMES CUI, and MARION CUI, SANDRA JOAN PARKS, JOANNE L. DeCAMBRA, and DOES 1–10, Defendants–Appellees

No. 13446

(CIV. NO. 86–4792)

FEBRUARY 27, 1990

PADGETT, ACTING C.J., HAYASHI, AND WAKATSUKI, JJ., AND RETIRED JUSTICE NAKAMURA, ASSIGNED BY REASON OF VACANCY, AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN, IN PLACE OF LUM, C.J., RECUSED

OPINION OF THE COURT BY WAKATSUKI, J.

In **Ono v. Applegate**, 62 Haw. 131, 612 P.2d 533 (1980), this court "allow[ed] a person injured by an inebriated tavern customer to recover from the tavern that provided liquor to the customer." **Id.** at 136, 612 P.2d at 538. Appellant, in this case, would have this court extend liability to non–commercial suppliers of alcoholic beverages, i.e., the social host. We decline.

I.

The employees of the Kentucky Fried Chicken (KFC), Aiea branch, had planned a Christmas party for themselves to take place on December 19, 1986. KFC management was aware of the planned party and gave approval for the party to be held on the premises of the Aiea branch after normal closing hours. Management even permitted the use of paper goods from the store and allowed the participants to eat any leftover unsold chicken. Alcoholic beverages, however, were supplied solely by the party participants.

Sandra Joan Parks was a KFC employee at another branch. Mikilani Travis, the restaurant manager of the Aiea branch and a friend of Sandra, invited Sandra to the Aiea branch Christmas

party. It is alleged that Sandra was visibly intoxicated at the time she left the Aiea branch party. She managed, however, to drive to the Cuis' residence in Wahiawa.

Andrea Cui, who was 19 years old at the time, was an employee of the Aiea KFC. Though Andrea had met Sandra that evening for the first time, when Andrea invited several of her friends to continue the Christmas party at Andrea's home, Sandra joined them. Andrea brought out an ice chest containing beer which Sandra and others drank.

While the Christmas party was continuing on the Cuis' premises but outside the home, Andrea's parents, James and Marion Cui, were asleep in their bedroom.

Eventually, at an early hour in the morning of December 20th, Sandra drove home to Ward Avenue in Honolulu. She then took a shower, changed her clothes, and proceeded to drive her friend, Pinky Len Wai, home. While driving Pinky home, Sandra drove into oncoming traffic on Kapiolani Boulevard and crashed into a moped operated by Donna Johnston. As a result of this accident, Johnston was severely and permanently injured.

Johnston brought suit for damages and compensation against several defendants, including KFC, Andrea Cui, and Andrea's parents. As against KFC, Johnston claims that it was negligent in permitting alcoholic beverages to be consumed on its premises, in failing to prevent Sandra from becoming intoxicated, and in failing to prevent Sandra from driving while intoxicated. Johnston claims that Andrea's negligence was in continuing to provide Sandra with alcoholic beverages when Sandra was already intoxicated. The claim against Andrea's parents is premised on either the negligent failure to supervise the party, or on the theory that parents are liable for the torts of their minor children.

The trial court entered summary judgments in favor of KFC, Andrea Cui, and James and Marion Cui, ruling that these

defendants owed no duty to Johnston for which liability could be found in this case. Johnston appeals. We affirm.

## II.

In this case, different factual considerations are associated with each of the defendant groups. KFC and the Cui parents were not "hosts" in the sense that neither provided or served any alcohol to Sandra, although alcohol was consumed on the premises belonging to them. KFC, however, was Sandra's employer, and allegedly knew or should have known of Sandra's drinking habit. Andrea Cui was the only defendant who allegedly "provided and served" alcoholic beverage to Sandra.

## A.

A necessary element in a negligence action is "[a] duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks." *Ono v. Applegate*, 62 Haw. at 137, 612 P.2d at 538.

This court has often pointed out "that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Cootey v. Sun Inv., Inc.*, 68 Haw. 480, 484, 718 P.2d 1086, 1090 (1986); *Waugh v. University of Haw.*, 63 Haw. 117, 135, 621 P.2d 957, 970 (1980); *Kelley v. Kokua Sales & Supply, Ltd.*, 56 Haw. 204, 207, 532 P.2d 673, 675 (1975).

"[A]s our ideas of human relations change the law as to duties changes with them .... Changing social conditions lead constantly to the recognition of new duties." W.P. Keeton, *Prosser & Keeton on The Law of Torts* § 53, at 359 (5th ed. 1984). This court, however, is reluctant to impose a new duty upon members of our society without any logical, sound, and compelling reasons taking

into consideration the social and human relationships of our society.

> As the Connecticut Supreme Court aptly stated:
> "Experience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better. . . . The adaptability of the common law to the changing needs of passing time has been one of its most beneficial characteristics . . . . If, however, stare decisis is to continue to serve the cause of stability and certainty in law — a condition indispensable to any well–ordered system of jurisprudence — a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." [Citations omitted.]

*Ely v. Murphy,* 207 Conn. 88, ___, 540 A.2d 54, 57 (1988) (quoting *Herald Publishing Co. v. Bill,* 142 Conn. 53, 62, 111 A.2d 4, 8 (1955); *Ozyck v. D'Atri,* 206 Conn. 473, 482–83, 538 A.2d 697, 702 (1988) (Healey, J., concurring)).

### B.

Traditionally, the common law held that when a person consumes alcohol to a point of being intoxicated and injures another, he is the sole proximate cause of that injury. Thus, no liability could be attributed to the supplier of the alcoholic beverages. *See Ono v. Applegate,* 62 Haw. at 134, 612 P.2d at 537. In *Ono v. Applegate,* however, this court modified the traditional common law rule by imposing a duty upon commercial suppliers of alcohol to injured third parties. In adopting this modification, this court relied upon "the clear trend" across the country to impose such duty, and also by reference to a statute establishing a standard of conduct for liquor licensees. However, as to the non–commercial supplier of alcoholic beverages, — the social host — we find no clear judicial trend toward modifying the traditional common law,

nor any statutory enactment or policy which leads this court to conclude that a change in the common law is appropriate at this time.

1.

Many courts, faced with many different factual permutations, have dealt with the issue of social host liability. The clear trend has been a refusal to impose a duty upon a social host to protect third parties from risk of injuries that may be caused by an adult who is provided and served alcohol beverages. To date, only the courts in New Jersey and Massachusetts impose such a duty. *Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984);[1] *McGuiggan v. New England Tel. & Tel. Co.*, 398 Mass. 152, 496 N.E.2d 141 (1986).[2]

---

[1]In *Kelly v. Gwinnell*, the New Jersey Supreme Court held that "where the social host directly serves the guest and continues to do so even after the guest is visibly intoxicated, knowing the guest will soon be driving home, the social host may be liable for the consequences of the resulting drunken driving." 96 N.J. at 548, 476 A.2d at 1228.

Subsequent to *Kelly*, a New Jersey appellate court refused to impose social host liability on a host who opened his home, provided food, glasses, ice, and non-alcoholic beverages, but did not supply the alcohol. *Gibson v. Foakes*, 212 N.J. Super. 709, 515 A.2d 1314 (1986). In that case, the intoxicated guest brought and consumed his own liquor, and after leaving the host's residence was involved in a motor vehicle accident in which two people were killed and two others injured. The *Gibson* court stated:

> *Kelly* [*v. Gwinnell*] clearly articulates the need for the host to have control over the liquor supply and that the host be in a position to observe the condition of the guest. Conceptually, the rule in *Kelly* is concerned with a social host's active, as contrasted with passive involvement in creating a peril.

Conceivably, even the New Jersey courts would not impose liability upon KFC and the Cui parents in this case.

[2]The Massachusetts Supreme Court held that it "would recognize a social host's liability to a person injured by an intoxicated guest's negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person's injury. In deciding whether the social host exer-

The California Supreme Court's attempt to create a judicially declared social host liability has been effectively reversed by legislation.[3]

---

cised ordinary prudence in such circumstances, a relevant consideration will be whether the social host knew or reasonably should have known that the intoxicated guest might presently operate a motor vehicle." *McGuiggan v. New England Tel. & Tel. Co.*, 398 Mass. at 162, 496 N.E.2d at 146. In the *McGuiggan* case, however, all the evidence indicated that the driver did not appear intoxicated and the host did not know that the driver was intoxicated. Therefore, the court affirmed a summary judgment in favor of the social host.

In another Massachusetts case, *Alioto v. Marnell*, 402 Mass. 36, 520 N.E.2d 1284 (1988), plaintiffs brought suit against the parents of a 19–year–old intoxicated driver. Although the driver became intoxicated at a party at the defendant–parents' house, the court held that there was no liability because the parents did not serve alcohol to their son, nor did they supervise the party or have a duty to do so.

As applied to this case, the Cui parents would not be liable even under Massachusetts law.

[3] The California Supreme Court in *Coulter v. Superior Court*, 145 Cal. Rptr. 534, 577 P.2d 669 (1978), held that a social host who furnishes alcoholic beverages to an obviously intoxicated person, under circumstances which create a reasonably foreseeable risk of harm to others, may be held legally accountable to third persons who are injured when the harm occurs. Recognizing that various factors went into determining whether duty exists, including the weighing of different public policy considerations, the court proceeded to weigh the competing concerns. Coming out on the side of imposing liability, the court concluded "that the burden upon the noncommercial suppliers of intoxicating beverages and the consequences to the community of imposing civil liability are [not] so serious as to justify a contrary holding." *Id.* at 539–40, 577 P.2d at 674–75.

Unquestionably, the California legislature did not agree. Within months after the *Coulter* decision, it passed a law which provided that "[n]o person who sells, furnishes, gives, or causes to be sold, furnished or given away, any alcoholic beverage . . . shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage." It went on to declare "that this section shall be interpreted so that the holdings in cases such as . . . *Coulter v. Superior Court*, be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person." Cal. Bus. & Prof. Code § 25602(b), (c) (West 1985).

In Minnesota and Iowa, where the courts relied upon civil damages statutes to find a duty running from social hosts to injured third parties, the legislatures in those states amended the statutes to effect the opposite result.[4]

## 2.

Among state legislatures, the "predominant trend has been to preclude social host liability." Comment, *Third Party Liability for Drunken Driving: When "One for the Road" Becomes One for the Courts*, 29 Vill. L. Rev. 1119, 1149 (1983–84). *See also supra* notes 3 and 4.

Our state legislature, over the past years, has demonstrated an active and ongoing interest in enacting heavier punishment for alcohol abusers and drunk drivers. But our legislature has not enacted any statute imposing liability upon social hosts or establishing standards of conduct for social hosts upon which this court

---

[4] An Iowa statute permitted civil actions against "any person ... selling or giving" alcoholic beverages to persons under 21 years of age. That statute compelled the Iowa Supreme Court to allow a cause of action brought by a party injured by an intoxicated person against a social host who provided the alcohol to the intoxicated person. *Williams v. Klemesrud*, 197 N.W.2d 614 (Iowa 1972). By the time that case came before the Iowa Supreme Court, the Iowa legislature had already amended the statute to limit liability to only liquor licensees and permittees. Although the court had to apply the prior statute to the *Williams* case, it recognized that "cases such as this will not arise in the future." *Id.* at 616.

In *Ross v. Ross*, 294 Minn. 115, 200 N.W.2d 149 (1972), the defendant illegally purchased liquor for a minor who became intoxicated and died in a motor vehicle accident. Relying on a civil damages statute which permitted a cause of action "against any person" who illegally gave or sold liquor to another, the Minnesota Supreme Court allowed an action brought by the parents of the deceased minor. Following *Ross*, the Minnesota statute was amended several times, but always limiting liability to commercial suppliers of liquor. Minn. Stat. Ann. § 340A.705 and Historical Notes to § 340.95 and § 340A.705 (1990). *See also Holmquist v. Miller*, 367 N.W.2d 468 (Minn. 1985), and *Meany v. Newell*, 367 N.W.2d 472 (Minn. 1985).

may hold a social host civilly liable for a breach of duty to protect third persons from risks of injury from "drunk" driving accidents.

3.

We fail to see any judicial trend to impose a "change in the law which has the power to so deeply affect social and business relations." *Garren v. Cummings & McCrady, Inc.*, 289 S.C. 348, 350, 345 S.E.2d 508, 510 (S.C. App. 1986) (quoting *Miller v. Moran*, 96 Ill. App. 3d 596, 600–01, 52 Ill. Dec. 183, 186, 421 N.E.2d 1046, 1049 (1981)).

Although we are well acquainted with the arguments for and against social host liability,

> [t]he nature of the judicial role prevents us from capably deciding the merits of social host liability. Evaluating the overall merits of social host liability, with its wide sweeping implications, requires a balancing of the costs and benefits for society as a whole, not just the parties of any one case.

*Burkhart v. Harrod*, 110 Wash. 2d 381, 385, 755 P.2d 759, 761 (Wash. 1988).

Social host liability implicates changes in social relations in a society where consumption of alcohol is a pervasive and deeply rooted part of our social life. *See* Comment, *Social Hosts and Drunken Driving: A Duty to Intervene?*, 133 U. Penn. L. Rev. 867, 872 (1985); *Gariup Constr. Co. v. Foster*, 519 N.E.2d 1224, 1232–33 (Ind. 1988) (dissenting opinion of Pivarnik, J.); *Edgar v. Kajet*, 84 Misc. 2d 100, 375 N.Y.S.2d 548 (1975).

From an economic perspective, there needs to be consideration of the effect social host liability would have on homeowners' and renters' insurance rates, and the economic impact on those not wealthy or foresighted enough to obtain such insurance. 133 U. Penn. L. Rev. at 873; *Burkhart v. Harrod*, 110 Wash. 2d at 386,

755 P.2d at 761. Furthermore, cost considerations are not limited to an ultimate finding of liability against the social host. A host will, in all probability, be made a defendant in a civil suit for damages and compensation brought by a third person who is injured in a car accident involving a friend, invitee or guest of the host who provided and served the alcoholic beverage, thereby incurring the cost of defending against such a suit even though the host may not be liable.

### III.

We hold that, as a matter of law, Andrea Cui, James and Marion Cui, and KFC, as an alleged social host or an employer, owed no duty to Johnston under the facts of this case.

Affirmed.

*Richard Turbin* (*Guy A. Sibilla* with him on the briefs) for Plaintiffs–Appellants.

*Barry M. Kurren* (*Lance S. Fujisaki* with him on the brief of Burke, Sakai, McPheeters, Bordner & Gilardy) for Defendant–Appellee KFC National Management Company.

*Jeffrey H. K. Sia* (*Gail M. Kang* with him on the brief of Libkuman, Ventura, Ayabe, Chong & Nishimoto) for Defendants–Appellees Andrea Cui, James Cui, and Marion Cui.

On the Amicus Curiae Briefs:

*Kenneth R. Kupchak* (Damon, Key, Bocken, Leong & Kupchak) for Hawaii Council for Mothers Against Drunk Driving.

*Mark S. Davis* (*Jeffrey White* with him on the brief of Davis & Levin) for Association of Trial Lawyers of America.

*Sherry P. Broder* for Hawaii Counsel for The Council on Alcohol Policy of The National Association for Public Health Policy and *Robert A. Roth* for The National Association for Public Health Policy.

*John M. McGuire, Wesley M. Fujimoto* and *Sabrina R. Toma* on the brief of Torkildson, Katz, Jossem, Fonseca, Jaffe & Moore for Chamber of Commerce of Hawaii, Retail Merchants of Hawaii and Manufacturers Association of Hawaii.