Barrymore **HANAKAHI**, individually, and Jeanette K.K Hanakahi, individually, and as Special Administrator of the Estate of Alexa B.H. Hanakahi, Plaintiffs,

v.

The **UNITED STATES of America**, Defendant.

No. CV. 00–00807–DAEKSC.

United States District Court, D. Hawai'i.

Jan. 31, 2002.

Michael K. Livingston, Mark S. Davis, Davis, Levin, Livingston, Grande, Honolulu, HI, for Barrymore Hanakahi, individually and as Special Administrator of the Estate of rec. Alexa B. Hanakahi, Jeannette K.K. Hanakahi, individually, and as Special Administrator of the Estate of rec. Alexa B.H. Hanakahi, plaintiffs.

Thomas A. Helper, Robert P. Morean, Office of the United States Attorney, Honolulu, HI, for United States of America, defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, Chief Judge.

The court heard Defendant's Motion on January 22, 2002. Michael K. Livingston, Esq., and Mark S. Davis, Esq., appeared on the briefs or at the hearing on behalf of Plaintiffs; Thomas A. Helper, Assistant U.S. Attorney, appeared on the briefs or at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendant's Motion for Dismissal.

### BACKGROUND

Private Jason Hilliard was a member of B Company 2/27 Infantry, 25th Infantry

Division, stationed at Schofield Barracks, Hawaii, at all times relevant to this lawsuit. Captain Richard Procell commanded B Company.

On February 20, 1997, Hilliard drank in his barracks, then drove his car off base with another soldier. Hilliard's car collided with a car driven by Alexa Hanakahi, who was killed in the accident. That accident is the basis of this lawsuit.

In July 1996 Hilliard and the rest of B Company were deployed to the Sinai Peninsula to participate in the international peacekeeping force. From January 1996 until the night of February 19–20, 1997, when the accident at issue occurred, Hilliard consumed large enough quantities of alcohol to eventually develop clinical alcohol dependence and alcohol-related liver damage. The legal drinking age for U.S. Army soldiers in the Sinai was 21. Jason Hilliard was under 21 at all relevant times.

On Christmas night in 1996, Hilliard apparently realized he had a serious alcohol problem. He referred himself to the Army's Alcohol and Drug Abuse Prevention and Control Program ("ADAPCP"). This self-referral required approval by all levels of Hilliard's chain of command, from his immediate supervisor to his commander, Captain Procell. Hilliard was assessed in the Sinai by a social worker, Maj. Mosley, who concluded that Hilliard freely accepted that he needed treatment for his "significant alcohol use and high tolerance." ADAPCP Records, p. 111. Because there were no ADAPCP facilities in the Sinai, Maj. Mosley's plan was for Hilliard to begin treatment upon re-deployment at Schofield Barracks.

Hilliard's unit returned to Schofield Barracks in January 1997. Hilliard claims that he attempted to initiate treatment through ADAPCP on arrival, however, he was told to wait until things settled down. Less than one week after the Battalion's return, Hilliard was arrested by the military police for underage drinking at the Sports Dome bar located near the barracks at Schofield Barracks. Hilliard's arrest was brought to the attention of his chain of command. As a result, Hilliard was given Field Grade Article 15 Punishment, which resulted on February 3, 1997, in imposition of 45 days restriction to barracks, 45 days extra duty, a forfeiture of pay, and a reduction in rank. He was also given a command referral to ADAPCP, signed by Capt. Procell on January 23, 1997.

While restricted to post Hilliard was required to get permission to go anywhere outside the confines of Schofield Barracks military installation. He was not imprisoned and therefore was not under guard nor was he closely watched. This restriction to post would have been in effect at the time of the accident. Generally, soldiers who were subject to such discipline would not be eligible for Track III placement until the discipline had been completed. Track III is a residential treatment program involving a 6–8 week period of inpatient care with mandatory outpatient follow-up for one year.

The January 23, 1997 command referral led to an ADAPCP "Brief Screen" later that same day by an ADAPCP counselor. Hilliard was scheduled for an ADAPCP "Full Screen" on January 28, 1997. On January 28, 1997 the full screen was conducted by Dr. James Slobodzien, who became Hilliard's ADAPCP counselor. Dr. Slobodzien recommended Hilliard for Track III residential treatment. In late January or early February 1997, a counselor from ADAPCP called Procell to discuss the appropriate Track for Hilliard. Army Regulation 600–85 governs Army personnel in determining how to treat soldiers with alcohol problems. The regulation requires the Army to balance the needs of the Army and the needs of the

soldier. According to Regulation 600–85, in order to enroll a soldier in Track III, the commander's approval is required. In addition, 600–85 sets out an appeal process to resolve a dispute between doctors and commanders. Capt. Procell did not concur that Track III was appropriate for Hilliard. He told the counselor that he believed that Track II was appropriate for Hilliard at that time.

On February 6, 1997, after Hilliard had attended a Track II class, he was seen by Dr. Kent Brockman. According to Dr. Brockman's notes, Hilliard reported that he had been drinking up to a fifth of bourbon on weekdays and two fifths on weekend days for two years, but that he had cut down to about a third of this level. Dr. Brockman consulted with Dr. Wayne Batzer, Chief of the Tri–Service Alcoholism Recovery Facility, and Clinical Consultant to the Alcohol and Drug Abuse Prevention and Control Program. Batzer was the highest ranking military officer with direct responsibility for ADAPCP, and the top medical officer at ADAPCP. Based on his review of the case with Dr. Brockman, Batzer concurred with Capt. Procell that Track III placement was not required.

In January 1997, Hilliard arranged to buy a car from Daniel Schofield. Hilliard paid $2000 to Schofield and agreed to pay $1500 more. When payment was complete, Schofield would transfer title to Hilliard. Hilliard testified that Schofield would maintain insurance on the car, but he did not to do this. From approximately January 15, 1997 until the night of the accident, Hilliard possessed and was regularly operating the car purchased from Schofield. During this period, Hilliard drove the car on base and parked in the parking lot outside the residential barracks.

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). For the purposes of a 12(b)(6) motion, "[r]eview is limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir.1994).

A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989)) (further citations omitted). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *See id.*

To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. Monterey*, 920 F.2d 1496, 1507 (9th Cir.1990).

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The moving party, however, need not produce evidence negat-

ing the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this court may not make credibility determina-tions or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

Plaintiffs assert several different claims based on the various sections of Restatement (Second) of Torts, which they have broken down into the following categories: *See* Memo in Opp. p. 26.

(1) Claims based on the affirmative acts of the Government actors which Plaintiffs assert created and exposed others, including Alexa Hanakahi to an unreasonable risk of harm. These claims are based on §§ 302 and 302A.

(2) Claims based on Plaintiffs' allegation that the Government actors permitted Hilliard to drive the vehicle involved in the accident, where both the vehicle and the privilege of driving were under the control of Hilliard's chain of command, and where the chain of command knew or should have known that Hilliard was likely to use the vehicle and drive in such a manner as to create an unreasonable risk of harm to others. These claims are based on § 308.

(3) Claims based on the alleged duty of Government actors to control the conduct of Hilliard as to prevent him from causing physical harm to others where a special relationship existed between the Government actors and Hilliard which imposed a duty upon the Government actors to

control Hilliard's conduct. These claims are based on §§ 315, 317, 319.

(4) Claims based on the alleged failure of the Government actors to exercise reasonable care in rendering services to Hilliard which they should have recognized as necessary for the protection of third persons where their failure to exercise reasonable care increased the risk of such harm. The claims are based on § 324A.

Plaintiffs have also asserted two additional categories of claims:

(1) Traditional professional negligence claims based on the breach of the applicable standards of care by the ADAPCP clinicians in providing treatment to Hilliard for his medical condition of alcohol dependence

(2) Claims based on violations by the Government actors of numerous duties created by official Army regulations

## A. The Government Owes No Duty Under Hawaii Case Law

■■■ The FTCA waives sovereign immunity for specified tort actions arising out of conduct of federal employees. 28 U.S.C. § 2674. Under the FTCA, the district court must determine whether the United States is subject to tort liability by applying the law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b); *USAir Inc., v. United States Dep't of the Navy*, 14 F.3d 1410, 1412 (9th Cir.1994). In actions arising under the FTCA, the United States is liable for the negligence of its employees only "in the same manner and to the same extent as a private individual under like circumstances..." 28 U.S.C. § 2674 (1982); *Louie*, 776 F.2d at 824. To ascertain the Government's liability in this case, the court must determine whether Hawaii law would impose liability on private persons or corporations under similar circum-

stances. The Government identified four roles with analogous private-party counterparts played by the government in this scenario: employer, landlord, healthcare provider and law enforcement agency. The Government correctly asserts that under Hawaii case law, the Government owes no duty to control Hilliard's drinking or driving in any of its roles under the particular facts of this case.

### 1. A private landlord or employer in the circumstances presented here would owe no duty to control Hilliard's drinking or driving

Plaintiffs contend that the United States owed a duty to control Hilliard's drinking because the United States owned or controlled the barracks. Hawaii case law refutes this contention. Traditionally, the common law has held that when a person consumes alcohol to a point of being intoxicated and injures another, he is the sole proximate cause of that injury. *Johnston v. KFC Nat'l Management Co.*, 71 Haw. 229, 233, 788 P.2d 159, 161 (1990); *cf. Ono v. Applegate*, 62 Haw. 131, 612 P.2d 533 (1980) (modifying the traditional common law rule by imposing a duty upon commercial suppliers of alcohol to injured third parties). In *Johnston*, a KFC employee attended a KFC Christmas party while intoxicated, and later collided with Johnston while driving home after attending a second party. Johnston brought suit for damages and compensation against several defendants including KFC. Johnston claimed that KFC was negligent in permitting alcoholic beverages to be consumed on its premises, in failing to prevent the driver of the vehicle from becoming intoxicated, and in failing to prevent her from driving while intoxicated.

The court held that as a matter of law, KFC owed no duty to Johnston as either a social host or an employer, since although

KFC allowed its employees to drink on its premises, it did not supply the alcohol. The court reached this result even though "KFC...was [Parks's] employer and allegedly knew or should have known of [her] drinking habit." *Id.* at 232, 788 P.2d at 161.

Plaintiffs' allegations that the United States had a duty to prevent Hilliard from drinking on its premises cannot be reconciled with *Johnston's* holding. In *Johnston,* the defendant was the host of the party and the driver allegedly was "visibly intoxicated when she left the KFC premises," *Id.* at 231, 788 P.2d 159. In contrast, the United States was only the "landlord" of the space in which Hilliard allegedly drank, and its employees had no opportunity to observe his intoxication on the night in question. Plaintiffs do not try and distinguish their case from *Johnston* nor do they cite any other Hawaii case law on this point. Accordingly, the Hawaii case law supports the Government's position that no duty was owed by the Government in this case in its role as landlord or employer.

**2. A private healthcare provider in the circumstances presented here would owe no duty to control Hilliard's drinking or driving**

Plaintiffs argue that the United States had a duty to the public to cure Hilliard's alcohol problem or to prevent him from drinking and driving because its doctors were treating Hilliard for alcoholism. Plaintiffs allege that this treatment was negligent and that the doctors owed a duty to the public at large to prevent Hilliard from drinking and driving. However, the Government correctly points out that Hawaii law does not impose such a duty.

Hawaii law only imposes a duty to control another to protect a third party under limited circumstances. Hawaii follows the approach of the Restatement (Second) of Torts §§ 315 and 319, which provide:

Section 315

There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

Quoted in *Seibel v. City of Honolulu,* 61 Haw. 253, 258, 602 P.2d 532, 536 (1979).

Section 319

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Quoted in *Seibel,* 61 Haw. 253 at 259, 602 P.2d 532.

Plaintiffs attempt to allege a special relationship between the United States and Jason Hilliard to support a duty under § 315(a).

The Hawaii Supreme Court has held that an entity must have custody and control over the actor before the court will find a special relationship imposing a duty in tort on the entity. *Ajirogi v. State of Hawaii,* 59 Haw. 515, 583 P.2d 980 (1978); *Seibel v. City and County of Honolulu,* 61 Haw. 253, 602 P.2d 532, 536 (1979); *Lee v. Corregedore,* 83 Hawai'i 154, 925 P.2d 324 (1996). Plaintiffs maintain that Hilliard was both in the custody and control of the government. They argue that as an enlisted soldier, the extent of control and custody "is equivalent to, and in many respects

exceeds, the control by the parent, master, or institutional custodian over a child, servant, or ware." Memo in Opp. p. 33. The court disagrees. The relationship of an enlisted soldier to the United States is a hybrid more akin today to a voluntary one. Hilliard was not drafted into the army, but rather chose to enlist. The enlisted soldier is more akin to an employee than a child, servant, or ward in a non-combatant theater environment such as Hawaii. Hilliard's position and the Government's relationship to him is similar to the voluntary inpatient receiving medical treatment in *Ajirogi*, where the court held the hospital did not have custody or control. *Ajirogi*, 59 Haw. at 522, 583 P.2d 980. The government points out that an interpretation that soldiers are always in the control of the government because they are under military command would essentially make the government strictly liable for the off-duty misconduct of its soldiers in many circumstances. The Ninth Circuit has rejected this contention. *Louie v. United States*, 776 F.2d 819, 826 (9th Cir.1985) (rejecting plaintiff's claim that Army had special relationship with off-duty drunken soldier, where claim was based on "the military's alleged power to exert complete authority over off-duty servicemen".) While it is true that Hilliard could not "quit" the Army, he could put in for discharge or be involuntarily discharged much akin to being fired.

Plaintiffs' next contention is that the Government had control of Hilliard because he was restricted to his barracks. However, Plaintiffs fail to consider that Hawaii law looks to the purpose of an actor's obligation in determining whether the obligation creates a duty in tort. The Hawaii Supreme Court rejected the argument that a statute requiring police to assist in returning escaped mental patients to custody created a duty to protect the general public, because the statute "was intended to benefit the administrators of psychiatric facilities" not to protect "any class of persons from escaped or absent patients". *Namauu v. City and County of Honolulu*, 62 Haw. 358, 362, 614 P.2d 943, 946 (1980). Applying the principles articulated in *Namauu* to this case, where the purpose of confining Hilliard to the barracks was to punish him, not to protect others, it is clear that the Government did not have custody over Hilliard of the nature required to create a duty in tort.

The lack of the kind of custody and control over Hilliard suggested by Plaintiffs negates any claim under either § 315(a) or § 319.

**3. A Hawaiian law enforcement agency in the circumstances presented here would owe no duty to control Hilliard's drinking or driving**

Plaintiffs allege that the United States had a duty to the general public to prevent Hilliard from parking or driving on base because of his drinking and his lack of insurance. Because regulation of motor vehicles is a governmental function, the court will look to Hawaii tort law applicable to Hawaii governmental functions. "In such cases this court has sought to determine what liability state law attaches to similar activities undertaken by analogous entities subject to its jurisdiction." *Doggett v. United States*, 875 F.2d 684, 689 (9th Cir.1989).

■ Under Hawaii law, the government is only liable for enforcement of the law if its actions make plaintiffs' situation worse than inaction would have. *Freitas v. City and County of Honolulu*, 58 Haw. 587, 574 P.2d 529 (1978). Only where "the [performance of a government function] has increased the risk of harm and there is negligence is providing protection against the enhanced danger" is liability imposed. *Id.* at 590, 574 P.2d 529.

In this case, Plaintiffs contend that the Government knew or should have known that Hilliard was driving without valid title, license, or insurance. Even if these contentions were supported by the record, they would not give rise to a duty under Hawaii law because Plaintiffs only allege inaction on the part of the Government. They do not contend that the Government did anything to increase the danger of the situation. Accordingly, no claim can be maintained.[1]

**4. Because Hilliard's drunk driving was not foreseeable as defined under Hawaii law, a private party in the circumstances presented here would have owed no duty to prevent it.**

Even if Plaintiff could establish that the United States owed a duty, Plaintiffs would only be able to maintain their negligence claims by showing that Alexa Hanakahi, the victim, was in the class of Hilliard's foreseeable victims.

> Thus a further limitation on the right of recovery, as in all negligence cases, is that the defendant's obligation to refrain from particular conduct is owed only to those who are foreseeably endangered by the conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous.

*Rodrigues v. State*, 52 Haw. 156, 174, 472 P.2d 509, 521 (1970). The Hawaii Supreme Court made clear in *Ajirogi* that the analysis of an entity's duty to control a third person is a two-step process: (1) plaintiff must establish the existence of a special relationship; (2) plaintiff must establish that the victim was foreseeably endangered by the conduct. *Ajirogi*, 59 Haw. at 522–23, 583 P.2d 980. The tort duty is comprised of two mutually dependent elements—special relationship and foreseeability. *Lee*, 83 Hawai'i at 160, 925 P.2d 324.

In *Ajirogi*, the court found that although "T's escape from the hospital, his theft of an automobile and his attempt to commit burglary" were all foreseeable, this was "insufficient to meet the *Rodrigues* [foreseeability] test if it was not also foreseeable that T would operate the stolen car in a negligent manner so as to endanger others on the road." The court held that T's negligence was not foreseeable even though the state knew that T had twice stolen cars and operated them recklessly and without a license. *Id.* at 524–25, 472 P.2d 509. Applying these principles to the case at hand, Plaintiffs must demonstrate that the Government knew Hilliard would operate a car (one they did not know he owned) and that it was likely that he would do so negligently. Plaintiffs maintain that it is an "almost universal recognition that automobile accidents are foreseeable consequences of intoxicated drinking". Memo in Opp. p. 41. However, this does not address the argument that the Government, although aware of Hilliard's drinking problem, had no knowledge that Hilliard would drive drunk. The record shows that Hilliard stated he had never done so in the past. In fact, there is no Hawaii case law in which a duty was imposed on an entity to control the driving of a third party even where this party was known to have driven drunk in the past without anything more. Liability was imposed only when an entity representative at least saw the third party drunk before the accident, or provided alcohol to the third party.

In this case, there is no evidence that the Government had any knowledge that Hilliard drove drunk in the past, or that

---

1. Furthermore, there is no evidence in the record that Capt. Procell or any of Hilliard's doctors had any information that Hilliard owned or was operating a vehicle. Indeed, the evidence is to the contrary.

any Government representative provided alcohol to him, or saw him drunk before the accident. Accordingly, it was not foreseeable that he would operate the car in a negligent manner, and therefore, Alexa Hanakahi was not in the class of Hilliard's foreseeable victims. Consequently, under Hawaii law there is no duty owed to prevent Hilliard's conduct. Because Hilliard's negligence was not reasonably foreseeable, the Government owed no duty to prevent it.

Plaintiffs argue that because of the combination of the many roles played by the Government in this case Hawaii law recognizes a special relationship which would support the imposition of a duty to prevent Hilliard's drinking and driving. Plaintiffs cite *Doggett v. United States,* 875 F.2d 684 (9th Cir.1989), *Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), *Hines v. United States,* 60 F.3d 1442 (9th Cir.1995), and *Wong–Leong v. Hawaiian Independent Refinery, Inc.,* 76 Hawai'i 433, 879 P.2d 538 (1994) for this contention. In the first instance, only *Wong–Leong* is a case applying Hawaii law. In *Wong–Leong,* an employer was held to be directly liable for the negligent failure to control his employee while the employee was on company premises. The standards for this theory are set out in § 317. In order for § 317 to be applicable, the employee must have engaged in the conduct which created the unreasonable risk of harm on the employer's premises. In *Wong–Leong,* the employee consumed alcoholic beverage on the employer's premises. In this case, Hilliard drank in his barracks, which are properly considered his home rather than his place of employment. *See* discussion under §§ 315, 317, 319 below. Moreover, there was evidence that the employer in *Wong–Leong* was aware of and condoned the tradition of employees consuming alcoholic beverages on its premises outside working hours. There is no such evidence that the Government established or condoned the practice of *underage* drinking in the barracks. Even assuming there was such evidence, this case is distinguishable as the employee's conduct creating the unreasonable risk of harm occurred in his home, not at his place of employment. Further, unlike *Wong–Leong* where it was clearly foreseeable to the employer that the driver, who was drinking at work, would have to use his vehicle to drive home. In this case, Hilliard was in his "home" when he consumed the alcohol on the night in question. Even if his superiors knew he was drunk (of which there is no evidence) it is not reasonably foreseeable that he would leave his home and go out and drive drunk.

The *Hines* case imposed liability on the government because under California law, "a public entity can be held liable for injury when it fails to discharge a mandatory duty imposed by an enactment against the risk of a particular kind of injury and the entity's failure proximately cause that injury." *Posey v. California,* 180 Cal.App.3d 836, 225 Cal.Rptr. 830 (1986); *Trewin v. California,* 150 Cal. App.3d 975, 198 Cal.Rptr. 263 (1984). California law specifically held that an "enactment" includes a constitutional provision, statute, ordinance, or *regulation. Id.* Therefore, the regulation enacted by the Postal Service was sufficient to impose a duty under *California* law. There is no comparable Hawaii law which would impose a duty based on a regulation. Accordingly, under the applicable state law, no duty is imposed.

The *Doggett* case on which Plaintiffs rely heavily does not in fact hold that there was any special relationship supporting the imposition of a duty. *Doggett,* 875 F.2d at 693. The military relationship does not constitute a special relationship merely because of the military command's general right to control the conduct of military

personnel. *Hartzell v. United States,* 786 F.2d 964, 968 (9th Cir.:1986). In *Doggett,* the Ninth Circuit held that the United States could not be found liable on the theory that there was a special relationship which would impose a duty to prevent the officer's drinking and driving. This is exactly what Plaintiffs are trying to argue in this case. However, the case they cite for this proposition clearly undermines this contention. The Ninth Circuit did impose liability on the United States under a good Samaritan doctrine. *Id.* The Court held that because the Navy had voluntarily adopted a regulation prohibiting intoxicated personnel from driving off the naval base, and the regulation undertook to provide care to drunken personnel, the Government assumed responsibility to perform its good Samaritan task in a careful manner. *Id.* Therefore, there was a duty created by the regulation which was owed not only to the drunken personnel, but also to third-party motorists.

Plaintiffs argue that Army regulations 600–85 and 190–5:4–3 when taken together are similar to the regulation at issue in *Doggett* which created a duty which was owed to third-party motorists, such as Alexa Hanakahi in the present case. However, both the *Doggett* and *Sheridan* cases predicated the Government's liability on the negligent performance of its good Samaritan duty under the *state* law. Both California and Maryland state law held that when the government assumed the responsibility to perform its good Samaritan task it is under a duty to exercise due care in performance. (*See Williams v. State,* 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137 (1983)); However, a comprehensive search of Hawaii case law does not reveal similar state law precedent in Hawaii. Moreover, the case law addressing good Samaritan liability states "[E]xtending liability to voluntary, noncommercial and noncustodial relationships is contrary to the trend in the Legislature to encour-

age private assistance efforts. This public policy goal is expressed in the acts of the Legislature abrogating the Good Samaritan rules." *Lee v. Corregedore,* 83 Hawai'i at 164, 925 P.2d 324. Statutes such as HI St. § 663–1.5 and 200–28 bar the imposition of ordinary negligence on "Good Samaritans."

Moreover, even if Hawaii law similarly imposed liability for the negligent performance of a good Samaritan duty, this case is distinct from *Doggett* and *Sheridan.* In both of those cases, other Government officials had actual notice of the actor's drunken state, and were aware that the actor was in a condition that could pose imminent unreasonable risk of injury to others. In *Doggett,* Gorman, the naval officer responsible for the accident, was out drinking with fellow officers. In *Sheridan,* a naval corpsmen found Carr, the actor, in a drunken stupor. Individual government actors in positions of authority had the opportunity to observe an obviously intoxicated service member and failed to prevent them from causing harm to third parties. *Doggett* held that "if the petty officers on whom the regulation imposed the duty were or should have been aware that Gorman was intoxicated, and negligently failed to provide care for him as required by the regulation, the government would be liable." *Id.* at 694. However, in this case, there are no such petty officers. No individual, either with command over Hilliard or a peer, knew or had reason to know Hilliard was drunk or would drive drunk on the night of the accident. No one observed him drinking or in an intoxicated state. Accordingly, no liability can be imposed on the Government even if a good Samaritan doctrine imposes a duty on Government actors. Pursuant to *Doggett* and *Sheridan* that duty is only imposed on other government officials who had an immediate opportunity to prevent the conduct which created the

unreasonable risk of harm to third-parties. There are no such Government officials in this case.

Finally, even if Plaintiffs could establish a duty there are further problems in the negligence analysis. In order to establish a breach of duty, Plaintiffs must set forth an alternate standard that Defendant failed to meet. It is not clear that placement of Hilliard in Track II versus Track III is a breach of the duty owed. Moreover, it would be practically impossible to prove there was any course the Government could have taken which would have reasonably assured that Hilliard did not drink and drive. He was restricted to his barracks and broke this restriction. A different treatment placement and/ or punishment could have likely resulted in the same behavior. Moreover, there is a foreseeability problem. The Government could not have reasonably foreseen the accident. Hilliard had never before driven drunk and no Government official observed him in an intoxicated state on the night of the accident. In addition, there is a causation problem, the Government's action does not appear to be the proximate cause of the accident. Moreover, there is no evidence that a different course of action on the part of the Government would have changed the tragic outcome in this case. Given all of these factors, Plaintiffs will be unable to maintain a negligence claim against the Government in this case.

**B. Government Regulations Do Not Create A Duty**

■ Plaintiffs repeatedly cite federal regulations, rules, and operating procedures in their discussion of duty. They seem to imply that these regulations impose a duty on the Government to follow these regulations, which would support a tort claim. This contention is incorrect. Even when the injury occurs on federal property, the finding of negligence must be based upon state law. *United States*

*v. Muniz*, 374 U.S. 150[, 83 S.Ct. 1850, 10 L.Ed.2d 805] (1963); *Brock v. United States*, 601 F.2d 976, 979 (9th Cir.1979). Thus any duty that the United States owed to Catherine cannot be founded on Base regulation 125–5; its source must be Montana law. *Younger v. United States*, 662 F.2d 580, 582 (9th Cir.1981); *United Scottish Insurance Co. v. United States*, 614 F.2d 188, 193–94 (9th Cir. 1979). The federal statute or regulation under which the employee acted only becomes pertinent when a state law duty is found to exist.

*Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir.1982). Accordingly, Plaintiffs cannot rely on Government regulations, rules or procedures to create a duty to prevent the accident.

**C. The Restatement of Torts Sections Cited By Plaintiff Do Not Create A Duty**

■ As an initial matter, Defendant correctly asserts that the Restatement sections cited by Plaintiffs do not override the Hawaii case law cited by Defendant. However, even under the Restatement (Second) of Torts there is no duty imposed on the Government in the circumstances of the present case.

**1. §§ 302 and 302A**

The comments to these sections makes it clear that §§ 302 and 302A do not address the question of duty. Comment a to § 302, which is incorporated by reference in comment a to § 302A states:

This Section is concerned only with the negligent character of the actor's conduct, and not with his duty to avoid the unreasonable risk...If the actor is under no duty to act, his failure to do so may be negligent conduct within the rule stated in this Section, but it does not

subject him to liability because of the absence of duty.

Accordingly, these sections cannot impose a duty in this case.

Plaintiffs try to characterize Defendant's acts as misfeasance, as opposed to nonfeasance, thereby maintaining that this case fall under the rule set forth in *Touchette v. Ganal,* 82 Hawai'i 293, 922 P.2d 347 (1996). In *Touchette,* the Hawaii Supreme Court found that the wife of a man who murdered the relatives of her lover could be liable for the deaths because she "initiated and maintained a course of conduct which involved taunting and humiliating" the murderer about her affair, conduct which the wife allegedly should have known would endanger the victims. *Id.,* 922 P.2d at 358. The court reversed the dismissal of the complaint.

In this case, there is no such misfeasance on the part of the Defendant. All of the Plaintiffs' allegations in this case are nonfeasance. The rule of *Touchette* is inapplicable.

### 2. § 308

Section 308 provides as follows:

It is negligent to permit a third person to use a thing or to engage in activity which is under the control of the actor, if the actor knows or should have known that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Plaintiffs contend that because the Government allegedly knowingly permitted Hilliard to operate and park his car on base, it had control of the car, and therefore had a duty to stop him from driving it because of his drinking and lack of insurance. However, the Government correctly points out that this interpretation of control is distorted. Simply by allowing a car to park on one's property does not mean that the landowner has control of the car. The car was not under the control of the Government and therefore § 308 is inapplicable to the circumstances of this case. In fact there is no evidence in the record to suggest anyone in Hilliard's command knew he owned a car.

### 3. §§ 315, 317, 319

The analysis of why §§ 315 and 319 do not impose a duty in this case is found in Section A.2.

Plaintiffs maintain that § 317 reflects the duty of the master to control the conduct of a servant. For the same reasons discussed with regards to §§ 315 and 319, the control requirement is not met under these circumstances. Hilliard was not under the immediate control of the United States at the time of the accident. § 317 provides for employer liability for employee conduct outside the scope of employment in certain circumstances where the employer negligently allows the employee to use his premises. Plaintiffs maintain that Hilliard was drinking on the Government's "premises," when he got drunk in his barracks. This is not fairly considered employer premises. In this case, the United States is both Hilliard's landlord and employer. However, the barracks is Hilliard's residence, and therefore, the more appropriate analogy is that Hilliard was drinking in his home, not at his workplace. Soldiers in the modern military are given a certain amount of authority in their lay quarters. Accordingly, the United States' responsibility should be evaluated as a landlord, rather than an employer for this analysis. Plaintiffs have cited no Hawaii case law which would create a duty for a landlord to control the in-home drinking of a resident. Accordingly, no such duty is imposed in this case.

#### 4. § 321

Section 321 does not address the duty to control a third party, and does not override § 315's limitation that there is no such duty absent a special relationship. In addition, this section requires an affirmative act by the party alleged to have created the danger. *Geremia v. State*, 58 Haw. 502, 573 P.2d 107 (1977). Plaintiffs do not allege any affirmative act. Accordingly, this section does not impose any duty on the Defendant.

#### 5. § 324A

Section 324A provides, in relevant part, as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care increases the risk of such harm...

Plaintiffs allege that this section applies because the Government was negligent and the negligence increased the risk to Plaintiffs. However, the Government correctly asserts that Plaintiffs have a fundamental misunderstanding of § 324A. This misunderstanding was described in *Myers v. United States*, 17 F.3d 890, 903 (6th Cir.1994): "The test is not whether the risk was increased over what it would have been if the defendant had not been negligent. Rather, a duty is imposed only if the risk is increased over what it would have been had the defendant not engaged in the undertaking at all."

In this case, Plaintiffs cannot allege that the risk to Alexa Hanakahi was worse than if the Government had not provided any treatment to Hilliard, or had never confined him to barracks. Moreover, this section does not have anything to do with the duty to control a third party, and does not override § 315's limitation that there is no such duty absent a special relationship.

### D. Traditional Professional Negligence Claims in Treating Hilliard for Alcohol Dependence

Plaintiffs claim that they have a traditional professional malpractice case against the Government. Plaintiffs cite *Lee v. Corregedore*, 83 Hawai'i 154, 925 P.2d 324 (1996) in support of their claim. However, *Lee*, and the language of § 315 make it clear that this claim is untenable absent a special relationship, which Plaintiffs have failed to establish. Hawaii case law holds that absent a special relationship, third parties (i.e. persons outside the doctor-patient relationship) have no standing to bring such a claim. *Lee*. Accordingly, the traditional malpractice claim cannot be maintained.

Plaintiffs have failed to prove that Defendant owed Plaintiffs a duty under Hawaii case law. Absent a duty, no negligence claim can be maintained. Accordingly, Defendant's motion for dismissal should be granted.

### E. Discretionary Function Exception Bars Plaintiffs' Claims

██ The FTCA's waiver of sovereign immunity for tort actions is a limited waiver. Liability cannot be imposed if the tort claim stems from a federal employee's exercise of a "discretionary function." 28 U.S.C. § 2680(a). This court lacks jurisdiction over any claim to which the discretionary-function exception applies. *Sigman v. United States*, 217 F.3d 785, 793 (9th Cir.2000). The United States has the burden of establishing that the discretionary function exception applies. *Id.*

██ A two-part test is applied to determine whether the discretionary function is applied. *Id.; Alfrey v. United States*, 276 F.3d 557, 2002 WL 27603 (9th Cir.).

First, the court must decide whether the challenged conduct is discretionary, whether it involves "an element of judgment or choice." *Fang v. United States,* 140 F.3d 1238, 1241 (9th Cir.1998)(citing *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). This element is not met when a federal statute, regulation or policy specifically prescribes course of action for an employee to follow. *Id.*

 Second, if the challenged conduct is discretionary, the court "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954. "Only those exercises of judgment which involve considerations of social, economic, and political policy are excepted from the FTCA by the discretionary function doctrine." *Sigman,* 217 F.3d at 793. "The primary focus of the second part of the test is on 'the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Fang,* 140 F.3d at 1241. "When a statute, regulation or agency guideline allows a government agent to exercise discretion, it must be presumed that the agent's acts are guarded in policy when exercising that discretion." *Weissich v. United States,* 4 F.3d 810, 814 (9th Cir.1993).

 For Plaintiffs to proceed with this suit against the United States, the record must show that the relevant action of the Government violated mandatory and specific constraints that it had imposed on itself, or that the action was not rooted in policy.

Army Regulation 600–85 governs Army personnel in determining how to treat soldiers with alcohol problems. The regulation requires the Army to balance the needs of the Army and the needs of the soldier. The regulation requires that the commander approve a soldier's enrollment in Track III, and sets out an appeal process to resolve a dispute between doctors and commanders. Clearly, commanders have some input in the treatment received by their soldiers.

The first prong of the test is clearly met in this case. The challenged conduct, placing Hilliard in Track II rather than Track III, involved an element of judgment or choice. The regulation requires that both the ADAPCP personnel and the unit commander concur before a Track III placement could occur. Since Captain Procell did not concur, the placement was not made. The Government employees in this case clearly exercised discretion in making this determination.

The second prong of the discretionary exception is also met. AR 600–85 makes it clear that rehabilitation decisions are not simply medical decisions. The input of the commander makes it clear that there are other factors which are considered. Plaintiffs maintain that there is no evidence that anyone in the Government actually exercised discretion. However, Captain Procell sworn declaration makes clear that he was balancing the unit's operational needs against the needs of the soldier in order to determine whether to agree to a Track III placement.

The actions taken in this case are clearly susceptible to policy analysis. Allowing commanders say in the soldiers treatment reflects a fundamental policy—that there are conflicting concerns, a soldier's individual health and the security of the nation. There are times when the needs of the mission, as determined by the commander, may outweigh personal medical needs. This is the policy that was in play in this case. Accordingly, this military decision-making process, grounded in fundamental policy considerations, is protected by the discretionary function exception. *See Tiffany v. United States,* 931 F.2d 271, 277 (4th

Cir.1991) ("Of the legion of governmental endeavors, perhaps the most clearly marked for judicial deference are provisions for national security and defense.") Because the discretionary function exception bars Plaintiffs' claim that Hilliard's military commander improperly interfered in his treatment, the court lacks subject matter jurisdiction over that claim.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendant's Motion for Dismissal, or in the Alternative, Summary Judgment.

IT IS SO ORDERED.