Sarah C. WHITE, Individually and as Special Administrator of the Estate of Stefan Bournakel, Deceased, and as Next Friend of Nicos Robert Bournakel, a minor, Plaintiffs,

v.

Carol Ann SABATINO, Bob's Maui Dive Shop, Inc. dba Maui Dive Shop, a Hawaii Corporation; 3090 Incorporated, a Hawaii Corporation; Ronald E. Wallach; County of Maui; Franklyn L. Silva, Individually and in his capacity as Director of the Department of Liquor Control, County of Maui; Wayne M. Pagan, Individually and in his capacity as Deputy Director of the Department of Liquor Control, County of Maui; John Does 1–20; Jane Does 1–20; Doe Corporations 1–20; Doe Partnerships 1–20; Doe Associates 1–20; Doe Governmental Agencies 1–20; and Other Entities 1–20, In Personam

and

M/V Alii Nui O.N. 567359 In rem, Defendants.

Franklyn Silva, Wayne M. Pagan, and County of Maui, Cross-claimants,

v.

Carol Ann Sabatino, Robert Wallach, Bob's Maui Dive Shop, Inc. dba Maui Dive Shop, a Hawaii Corporation; and 3090 Incorporated, a Hawaii Corporation, Cross–Defendants.

Franklyn L. Silva, Wayne M. Pagan, Third–Party Plaintiffs,

v.

Carol Ann Sabatino, Third–Party Defendant.

In the Matter of the Complaint of 3090, Incorporated, a Hawaii Corporation as owners of the M/V Alii Nui O.N. 567359, for Exoneration from and/or Limitation of Liability.

Civ. Nos. 04–00500 ACK/LEK, 05–00025 ACK/LEK.

United States District Court, D. Hawai'i.

July 20, 2007.

Denise M. Hevicon, Earl I. Anzai, Law Offices of Earl I. Anzai, Glenn H. Uesugi, Michael Jay Green, Honolulu, HI, Eve M. Green, Eve M. Green Esq., Wailuku, HI, for Plaintiffs.

Michele N. Bass, Lesser & Associates, Redondo Beach, CA, Emily A. Gardner, Emily A. Gardner, Attorney at Law LLC, Honolulu, HI, Jeana Sciarappa Schott, Richard A. Lesser, Steven M. McGuire, Lesser & Associates PLC, Redondo Beach, CA, for Defendants.

### ORDER GRANTING COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON FOURTH AMENDED COMPLAINT AND GRANTING 3090, INC.'S MOTION TO STRIKE JURY

ALAN C. KAY, Senior District Judge.

### PROCEDURAL BACKGROUND

On July 15, 2004, Sarah C. White, Individually and as Special Administrator of the Estate of Stefan Bournakel, Deceased, and as Next Friend of Nicos Robert Bournakel, ("Plaintiff") filed a Complaint in the Circuit Court of the Second Circuit of the State of Hawaii against Carol Ann Sabatino ("Sabatino"); and Bob's Maui Dive Shop, Inc. dba Maui Dive Shop ("Maui Dive Shop") for all damages and costs that allegedly resulted from the February 13, 2004 automobile accident between Carol Ann Sabatino and Stefan Bournakel, resulting in Bournakel's death.

On August 16, 2004, Defendant Maui Dive Shop removed the case to Federal Court pursuant to 28 U.S.C. § 1333 and 28 U.S.C. § 1441(b)[1] from the Circuit Court of the Second Circuit State of Hawaii. This case was docketed Civ. No. 04–0500 (ACK/LEK).

On November 9, 2004, Plaintiff filed a Second Amended Complaint, adding Defendants 3090, Inc.; Ronald E. Wallach; and M/V Alii Nui, O.N. 567359 in rem.

On January 12, 2005, as owner of M/V Alii Nui, 3090, Inc. ("Limitation Plaintiff") filed a Complaint seeking exoneration from or limitation of liability to a sum equal to the amount or value of 3090, Inc.'s interest in the M/V Alii Nui pursuant to Rule F(1) of the Federal Rules of Civil Procedure. This limitation action, docketed as Civ. No. 05–00025, was consolidated with Plaintiff White's action, Civ. No. 04–00500, on April 15, 2005.

On February 16, 2005, the parties stipulated to a partial dismissal with prejudice of all claims against Defendant Sabatino. On June 16, 2005, Defendant Wallach filed cross-claims against Cross–Defendants Sabatino; 3090, Inc.; and Maui Dive Shop.

Three previous motions for summary judgment were filed in this case. On October 25, 2005, Wallach filed his first motion requesting summary judgment on all of Plaintiff's claims against him. On December 14, 2005, Plaintiff filed a Motion for Partial Summary Judgment regarding 3090, Inc.'s limitation complaint.

On February 9, 2006, the Court issued an Order denying Defendant Wallach's First Motion for Summary Judgment and granting Plaintiff's Motion for Partial Summary Judgment ("Feb. 9, 2006 Order"). *White v. Sabatino*, 415 F.Supp.2d 1163 (D.Hawai'i 2006). The Court held that there is a common law designated

---

**1.** 28 U.S.C. § 1333(1) provides, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1441(b) provides,

Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

driver duty under Hawaii law; that Limitation Plaintiff 3090, Inc. was negligent when it violated Maui County Liquor Rule § 08–101–69(a) ("Maui Fixed Price Rule"); and that because of such negligence Defendant and Limitation Plaintiff 3090, Inc.'s liability is not limited to the value of M/V Alii Nui. Nevertheless, the Court also ruled that material questions of fact precluded summary judgment on the issues of whether the crew of the Alii Nui served intoxicated passengers in violation of Hawaii's Intoxicating Liquor Statute § 281–78(b)(1)(B) or whether 3090, Inc. negligently failed to train and manage a competent crew. *Id.* at 1184–85.

On February 17, 2007, Defendant and Limitation Plaintiff 3090, Inc. filed a Motion for Reconsideration of the February 9, 2006 Order. 3090, Inc. attached to its Motion declarations from Maui County Liquor Department officials, Franklyn L. Silva and Wayne M. Pagan, stating that the Maui Fixed Price Rule was not intended to apply to the class 9 licensees such as 3090, Inc. On March 24, 2006, the Court issued an Order denying 3090, Inc.'s Motion for Reconsideration.

On May 11, 2006, Defendant Wallach again filed a Motion for Summary Judgment. On July 31, 2006, the Court granted Defendant Wallach's Motion for Summary Judgment in light of new judicial admissions that settled the issues of fact that had earlier precluded summary judgment on the issue of his negligence.

On September 1, 2006, Plaintiff filed a Fourth Amended Complaint, adding Defendants Maui County; Franklyn L. Silva, individually and in his capacity as the Director, Department of Liquor Control, County of Maui; and Wayne M. Pagan, individually and in his capacity as Deputy Director, Department of Liquor Control, County of Maui (collectively, "County Defendants"), based upon their declarations attached to 3090, Inc.'s Motion for Reconsideration. *See* Fourth Amended Complaint at ¶¶ 11–13, 25–28. The Fourth Amended Complaint alleges that the County Defendants negligently failed to enforce the Maui Fixed Price Rule against class 9 liquor licensees and that this negligence caused Plaintiff's injury. *Id.*

In her Fourth Amended Complaint, Plaintiff asserts that this Court has jurisdiction over the action pursuant to the general admiralty law of the United States; Rule 9(h) of the Federal Rules of Civil Procedure; and 46 U.S.C. § 740,[2] the Admiralty Jurisdiction Extension Act, which extends admiralty jurisdiction to all cases of damage and personal injury caused by a vessel on navigable water, notwithstanding that the injury occurred on land. *See* Fourth Amended Complaint at ¶¶ 1, 2.

On November 22, 2006, Franklyn L. Silva and Wayne M. Pagan Answered the

---

**2.** The Court notes that the 46 U.S.C. § 740 was repealed by Pub.L. 109–304, § 19, Oct. 6, 2006, 120 Stat. 1710. The prior Admiralty Extension Act provided that admiralty jurisdiction shall extend to all cases of damage and personal injury caused by a vessel on navigable water, notwithstanding that the injury occurred on land. A similar Act extending admiralty jurisdiction to cases of damage or injury on land was recodified at 46 U.S.C. § 30101(a), and now provides,

The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.

The U.S. Supreme Court has also held that the jurisdictional test for locality is "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Grubart v. Great Lakes Dredge & Dock Company,* 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995).

Fourth Amended Complaint and filed a cross-claim in their individual capacities against Defendants Carol Ann Sabatino, Maui Dive Shop, 3090, Inc., and Ronald E. Wallach. On January 16, 2007, The County of Maui, Franklyn L. Silva, and Wayne M. Pagan, in their official capacities, filed a cross-claim against Defendants Carol Ann Sabatino, Maui Dive Shop, and 3090, Inc. The cross-claim seeks contribution and/or indemnity in full from cross-defendants. On December 4, 2006, Franklyn Silva and Wayne Pagan, in their individual capacities, filed a third party complaint against Carol Ann Sabatino asserting a right to reimbursement, contribution, and/or indemnification from Sabatino. Subsequently, on April 27, 2007, Franklyn Silva and Wayne Pagan, in their official and individual capacities, filed a Notice dismissing with prejudice all claims asserted against Ronald Wallach in their cross-claims pursuant to Fed.R.Civ.P. 41(c).

Defendant Maui Dive Shop and Plaintiff have reached a settlement agreement. On November 16, 2006, Maui Dive Shop filed a Petition for Determination of Good Faith Settlement before Magistrate Judge Kobayashi. On May 7, 2007, Magistrate Judge Kobayashi issued a Findings and Recommendation ("F & R") that the Court grant Maui Dive Shop's Petition for Determination of Good Faith Settlement as provided by Haw.Rev.Stat. § 663–15.5. On June 29, 2007, the Court rejected the May 7, 2007 F & R and found that the settlement between Plaintiff and Maui Dive Shop is governed by admiralty rather than state law.

On April 25, 2007, the County Defendants filed a Motion for Summary Judgment on the Fourth Amended Complaint ("County Motion") and a Concise Statement of Facts ("County CSF"). On June 22, 2007, Plaintiff filed an Opposition to County Defendants' Motion ("Pl. Opp.") and a Concise Statement of Facts ("Pl. CSF"). On July 2, 2007, the County Defendants filed a Reply ("County Reply").

On June 7, 2007, Defendant 3090, Inc. filed a Motion to Strike Jury. On June 21, 2007 Defendant Maui Dive Shop filed a Statement of No Position with respect to Defendant 3090, Inc.'s Motion to Strike Jury. However, on June 27, 2007, Maui Dive Shop filed a Statement of Position that in the event that Maui Dive Shop has not been dismissed from the action at the time of trial, it would be entitled to a trial by jury. On June 22, 2007, Plaintiff submitted a Statement of No Opposition to Defendant 3090, Inc.'s Motion to Strike Jury. On June 25, the County Defendants filed an Opposition to Defendant 3090, Inc.'s Motion to Strike Jury.

A hearing on the County Defendants' Motion for Summary Judgment on the Fourth Amended Complaint and Defendant 3090, Inc.'s Motion to Strike Jury was held Wednesday, July 11, 2007 at 10:30 a.m.

### FACTUAL BACKGROUND [3]

On February 13, 2004, an automobile driven by Defendant Carol Ann Sabatino collided with a car driven by Stefan Bournakel, who died as a result of the collision. Prior to the accident, Sabatino was a passenger on a cruise vessel named the Alii Nui, where she allegedly became intoxicated from being overserved with alcoholic beverages. Defendant 3090, Inc. owns the Defendant M/V Alii Nui, and Defendant Maui Dive Shop owns Defendant 3090, Inc.

On February 13, 2004, the Maui Fixed Price Rule read in relevant part:

> No licensee of any premises licensed to sell liquor for consumption on the prem-

---

**3.** The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

ises shall ... Serve an unlimited amount of liquor during a set period of time for a fixed price, provided this provision does not apply to class 2 and class 12 licensees, when such function is not open to the general public, and for which a hosted bar is utilized such as weddings, private parties, and fundraising functions, or where liquor may be inclusive with champagne brunch or luaus . . . .

Maui County Liquor Commission Rule § 08–101–69.

According to Plaintiff, Jeff Strahn, the Vice President and General Manager of Maui Dive Shop and an officer of 3090, Inc., declared that in the fall of 2003 an inspector from the liquor commission told him that the practice of including liquor within the price of a ticket aboard the cruise vessel was not a violation of liquor commission rules. *See* Pl. CSF Exh. "C" at ¶ 3. Jeff Strahn also stated that the inclusion of champagne in the price of the ticket was used to market the Alii Nui tour to "high-end" clientele. *See* Pl. CSF Exh. "G" at 68. David Kelly testified that he was a passenger on the Alii Nui on February 13, 2004 and that the beverages and alcohol offered on the snorkeling and whale watching cruise enticed him to choose the tour on the Alii Nui rather than other tours. *See* Pl. CSF Exh. "H" at 31.

Franklyn L. Silva, the Director of the Department of Liquor Control, County of Maui, admitted that on February 13, 2004, the Maui Fixed Price Rule did not contain an exemption for tour or cruise vessel licensees. *See* County CSF at ¶ 5; Silva Decl. at ¶ 6. Silva stated that he participated in the promulgation of the Maui Fixed Price Rule and oversaw the drafting of the Rule. *See* Silva Decl. at ¶ 7. According to Silva, when drafting the Maui Fixed Price Rule, the Liquor Control Commission inadvertently failed to consider that whale-watching and snorkeling cruises, like res-

taurants and hotels, sometimes offer patrons a brunch and drinks for one ticket price. *See* County CSF at ¶ 6; Silva Decl. at ¶ 7. He stated that the Maui Fixed Price Rule was never intended to apply to whale-watching and snorkeling cruises. *Id.*

Silva declared that his involvement in the decision not to enforce the Maui Fixed Price Rule against cruise vessel licensees and/or 3090, Inc. was not motivated by malice, but was done in order to ensure that cruises received equal treatment as similarly situated Maui businesses. *See* County CSF at ¶ P 8–9; Silva Decl. at ¶ 10. According to Silva, the Maui Department of Liquor Control does not generally have the power to board vessels on navigable waters. Instead he stated that Maui Department of Liquor Control investigators periodically sit on the docks to observe passengers leaving cruise vessels for signs of intoxication. *See* County CSF at ¶¶ 10–11; Silva Decl. at ¶¶ 11–12. At the hearing, counsel for the County Defendants acknowledged that Liquor Control officers could board a vessel on navigable water that was tied to a pier.

The Maui Department of Liquor Control receives Maui police reports involving drivers with a blood alcohol content over the legal limit to determine whether a licensee was involved in over-serving alcohol. *See* County CSF at ¶ 12; Silva Decl. at ¶ 13. The Maui Department of Liquor Control received a copy of the police report of the Sabatino/Bournakel collision, investigated the incident, and charged 3090, Inc. with violating the rule against over-serving alcohol to Carol Ann Sabatino. *See* County CSF at ¶¶ 13–14; Silva Decl. at ¶ 14; Exh. "1". In December, 2006, the Maui Liquor Control Adjudication Board held an evidentiary hearing on the matter and found in favor of 3090, Inc. The Board did not find that a preponderance of the evidence supported the conclusion that Carol Ann

Sabatino was sold, served, furnished, or allowed consumption of liquor while she was under the influence. *See* County CSF at ¶ 15; Silva Decl. at ¶ 15.

Silva stated that the instant case brought to his attention that the Maui Fixed Price Rule needed to be amended, because in his view, a brunch or sunset cruise with alcohol included in the price of the ticket is the functional equivalent of a hotel brunch or luau. *See* Silva Decl. at ¶ 8. The Maui Fixed Price Rule was revised on March 14, 2007. *See* Silva Decl. at ¶ 9; County Exh. "4". The current version of the Rule reads, in relevant part:

> No licensee of any premises licensed to sell liquor for consumption on the premises shall ... serve an unlimited amount of liquor during a set period of time for a fixed price, provided this provision does not apply to class 2, class 9, and class 12 licensees:
>
>> (A) when such function is not open to the general public and for which a hosted bar is utilized such as weddings, private parties, and fundraising functions; or
>>
>> (B) where champagne may be inclusive with brunch; or
>>
>> (C) where liquor may be inclusive with luaus; or
>>
>> (D) where liquor may be inclusive with tour or cruise vessel operations.

Maui County Rule 08–101–69.

### *STANDARD*

#### I. Motion for Summary Judgment

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Sum-

mary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Thrifty Oil Co. v. Bank of America National Trust & Savings Ass'n,* 322 F.3d 1039, 1046 (9th Cir.2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (internal citation omitted).[4] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Miller v. Glenn Miller Productions,* 454 F.3d 975, 987 (9th Cir.2006). The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.[5]

Once the moving party satisfies its burden, the nonmoving party cannot simply

---

**4.** Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' International Ass'n,* 804 F.2d 1472, 1483 (9th Cir.1986).

**5.** When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative

rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. 1348; *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987).[6] The nonmoving party must instead set forth "significant probative evidence" in support of its position. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See T.W. Electrical Service*, 809 F.2d at 630–31.[7] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

The County Defendants argue that they are entitled to summary judgment on Plaintiff's claim that they negligently failed to enforce the Maui Fixed Price Rule against class 9 liquor licensees and thereby caused the Plaintiff's injury. The Court interprets the County Defendants' Motion for Summary Judgment as making four main arguments: (1) they are not bound by the Court's February 9, 2006 Order holding that the Maui Fixed Price Rule applied to 3090, Inc.; (2) the Court does not have admiralty or supplemental jurisdiction over Plaintiff's claims against the County Defendants; (3) Maui County is not liable to Plaintiff because it had no duty to enforce the Maui Fixed Price Rule against 3090, Inc.; and (4) Defendants Silva and Pagan are entitled to qualified immunity.

The Court notes that it is well-settled that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 166–67 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *See also Monell v. Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (stating that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("a suit

evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. *Miller*, 454 F.3d at 987 (quoting *C.A.R. Transportation Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.2000)). When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987.

6. Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *see also T.W. Electrical Service*, 809 F.2d 626, 630 (9th Cir.1987).

7. At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bator v. State of Hawai'i*, 39 F.3d 1021, 1026 (9th Cir.1994).

against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). The Court accordingly finds that the claims asserted against Defendants Silva and Pagan in their official capacities duplicate the claims asserted against the County of Maui and therefore DISMISSES Plaintiff's claims against Defendants Silva and Pagan in their official capacities.[8]

Defendant 3090, Inc. filed a Motion to Strike Jury, arguing that the instant action was filed in this Court under admiralty jurisdiction for which no right to a jury attaches.

## I. Law of the Case

The County Defendants argue that they are not bound by the Court's February 9, 2006 Order finding that Defendant 3090, Inc. was negligent when it violated Maui County Rule § 08–101–69(a)(2) (the "Maui Fixed Price Rule"). The Court concluded that the Maui Fixed Price Rule's "champagne brunch exception" for class 2 and 12 licensees did not apply to Defendant 3090, Inc. because it holds a class 9 liquor license for a tour or cruise vessel. *White v. Sabatino*, 415 F.Supp.2d 1163, 1183 (D.Haw.2006). In so finding, the Court held that the Maui Fixed Price Rule applied to Defendant 3090, Inc.

The County Defendants argue that this ruling does not apply to them because they were not parties to the case at the time the order was issued. In support, County Defendants cite *Flores v. Barretto*, 99 Hawai'i 270, 274, 54 P.3d 441 (Haw.2002)(holding that one requirement for the application of issue preclusion to a party is that the prior action must have been against the party or its privies). The instant Motion does not invoke issue preclusion or collateral estoppel. The Hawaii Supreme Court describes

collateral estoppel as "an aspect of res judicata which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a different claim between the same parties or their privies." *Id.* Here, County Defendants are not seeking to preclude the relitigation of the issue decided in a separate case, but are arguing that an earlier ruling in the same case does not apply to them. Rather than collateral estoppel, the applicable doctrine is the law of the case.

 "Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *U.S. v. Alexander,* 106 F.3d 874, 876 (9th Cir. 1997) (internal quotations and citations omitted). Wright, Miller, and Cooper state the general principle that "a party joined in an action after a ruling has been made should be free to reargue the matter without the constraints of law-of-the-case analysis." 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4478.5 (2d ed. 2002). Similarly, the Third Circuit has held, "We agree with the Seventh Circuit that '[t]he law of the case doctrine should not be read so rigidly that it precludes a party from raising an argument that it had no prior opportunity to raise.'" *Hamilton v. Leavy,* 322 F.3d 776, 787 (3d Cir.2003); *see also U.S. v. Maybusher,* 735 F.2d 366, 370 (9th Cir.1984). The Court is persuaded that the law of the case does not apply to defendants that had not been party to the action when the earlier ruling was argued and decided.

 Thus, the law of the case does not bind County Defendants with regard to

---

8. Plaintiff acknowledges that official capacity actions against government officials are duplicative of the claims against the local government and has withdrawn its claims against Defendants Pagan and Silva in their official capacities. *See* Pl. Opp. at 26.

the Court's February 9, 2006 Order, in which the Court decided the issue of whether the Maui Fixed Price Rule applied to 3090, Inc. on the relevant dates in this case. The County Defendants are free to re-argue the issue of the applicability of the Maui Fixed Price Rule to 3090, Inc. on February 13, 2004. The County Defendants have argued extensively that the Maui Fixed Price Rule did not apply to cruises such as the subject cruise, and at the hearing the County's attorney acknowledged that there is no reason why the Court could not now rule on this issue as to the County. Defendant Silva has acknowledged that the Maui Fixed Price Rule in effect on February 13, 2004 did not contain an exemption for tour or cruise vessel licensees. Even though law of the case may not bind the County Defendants on issues decided before they were joined as parties, they have not presented any arguments to convince the Court to depart from the earlier ruling in this case. Although the February 9, 2006 Order is not controlling, it continues to be highly persuasive. The Court reaffirms that the Maui Fixed Price Rule applied to Defendant 3090, Inc. on February 13, 2004.

## II. Jurisdiction

The County Defendants argue that the Court does not have admiralty jurisdiction or supplemental jurisdiction over Plaintiff's claims against them.

### A. *Admiralty Jurisdiction*

■ Plaintiff asserts a tort claim for negligence against the County Defendants and invokes the Court's admiralty jurisdiction under 28 U.S.C. 1333(1) and the Admiralty Jurisdiction Extension Act formerly codified at 46 U.S.C. § 740.[9] "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1)

over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Grubart v. Great Lakes Dredge & Dock Company et al.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). The test for locality is "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* The test for connection with a maritime activity, also called the "nexus test," involves two parts. First, a court is required to "assess the general feature of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce." *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363–64 n. 2, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990)(internal quotations omitted)). Second, the court must determine "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime commerce." *Grubart*, 513 U.S. at 539, 115 S.Ct. at 1051 (quoting *Sisson*, 497 U.S. at 365, 364 n. 2, 110 S.Ct. at 2897, 2896 n. 2).

■ With regard to the locality test, because there is no dispute that Plaintiff's injury in the car crash did not occur on navigable water, the question is whether the tort alleged occurred on navigable waters. *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043. Hence, the issue is whether County Defendants' allegedly tortious conduct of failing to enforce the Maui Fixed Price Rule against Defendant 3090, Inc. in its operation the Alii Nui occurred on navigable waters. While it is difficult in a literal sense to identify the location of a failure to act, the enforcement that Plaintiff alleges should have occurred would have taken place on the vessel Alii Nui on navigable waters. The only logical situs of a failure

---

9. The Act that extends federal jurisdiction to injuries that occurred on land but were

caused by a vessel on navigable waters is now codified at 46 U.S.C. § 3101(a).

to enforce a liquor regulation that prohibits serving of an unlimited amount of liquor during a set period of time on a cruise vessel is on the vessel itself where the alcoholic beverages are served. The County Defendants claim that liquor commission officers do not have the authority to board vessels on navigable waters. The County Defendants do not present any legal authority for this assertion. Counsel for the County Defendants conceded at the hearing that County Liquor Officials would be able to board a ship tied to a pier on navigable waters to enforce liquor rules. It is untenable for the County Defendants to argue that the liquor commission has no ability to regulate activities involving liquor on navigable waters when they issue class 9 liquor licenses for cruise vessels. Accepting the County Defendant's argument would lead to the illogical conclusion that the County's own regulations for class 9 liquor licensees have no effect and are unenforceable, because class 9 tour vessels are operated on navigable waters. Unless presented with contrary legal authority, the Court concludes that the liquor commission has the ability to regulate activities involving alcohol for its licensees on navigable waters. Here, the location of the enforcement of the Maui Fixed Price Rule should be at the point where the Alii Nui is docked at the pier on navigable waters. Thus, the locality test is satisfied with regard to Plaintiff's claim against the County Defendants.

As for the first prong of the nexus test, the question is whether the general features of the incident have the potential to disrupt commercial maritime activity. The Ninth Circuit has taken a relatively inclusive view of what type of activity, defined with an "intermediate level of generality," has a potentially disruptive effect on maritime commerce. *Gruver v. Lesman Fisheries, Inc.*, 489 F.3d 978, 982 (9th Cir.2007)(quoting *Grubart*, 513 U.S. at 538, 115 S.Ct. 1043). For example, in *Gruver*,

the court held that an employer's assault on a crewman on a fishing vessel was deemed to have a potentially detrimental effect on maritime commerce by depriving the vessel of a deckhand due to his injuries. *Gruver*, 489 F.3d at 983. In *Taghadomi v. United States*, the Coast Guard's allegedly negligent search-and-rescue operation of kayakers on a pleasure excursion were deemed to satisfy the first prong of the nexus test because "[s]earch-and-rescue operations also affect the vessels themselves: insofar as the rescuer can preserve the vessel, it prevents economic loss to the vessel's owner." 401 F.3d 1080, 1087 (9th Cir.2005).

Here, the activity, when defined at an intermediate level of generality, is the service of alcohol and regulation of alcohol served on commercial cruise vessels. Plaintiff produced the deposition of David E. Kelly, a passenger on the Alii Nui on February 13, 2004. *See* Pl. CSF Exh. "H". Mr. Kelly testified that he was aware that alcohol would be served on the February 13, 2004 snorkeling cruise and that the alcohol served as an enticement to select the tour operated by 3090, Inc. rather than other tours. *Id.* at 31–32. Jeff Strahn, manager of 3090, Inc., also testified that the ability to serve champagne and alcohol to the passengers of the tours was used, in part, to market the tour to "high-end" clientele. *See* Pl. Exh. "G", Strahn Depo. at 67–68. The ability to serve alcohol on cruise ships and tours as well as the manner that the alcohol served and marketed affects the commercial activities of maritime cruise operators because drunk passengers can disrupt cruise operations in many ways. A drunk passenger has a higher likelihood of becoming injured or inflicting injury aboard the ship, falling overboard, or generally interfering in the operation of the vessel. Thus, the lack of enforcement of liquor rules against cruise operators has the potential to disrupt com-

mercial maritime activity and satisfies the first prong of the nexus test.

The second prong of the nexus test requires the Court to decide whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *See Grubart*, 513 U.S. at 534, 115 S.Ct. 1043. The *Grubart* court elucidated the meaning of this prong:

> By using the word "involves," we made it clear that we need to look only to whether one of the arguably proximate causes of the incident originated in the maritime activity of a tortfeasor: as long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will "involve" such traditional maritime activity and will meet the second nexus prong.

513 U.S. at 541, 115 S.Ct. 1043. In *Grubart*, the city of Chicago's allegedly negligent action was improper maintenance and operation of a tunnel under the river, an activity that may not itself be substantially related to traditional maritime activity. *Id.* at 540, 115 S.Ct. 1043. The court decided that the "activity giving rise to the incident" in *Grubart* was co-defendant Great Lakes Dredge and Dock Company's repair or maintenance work on a navigable waterway. *Id.* The *Grubart* court noted that "even if we were to identify the 'activity giving rise to the incident' as including the acts of the city as well as Great Lakes, admiralty jurisdiction would nevertheless attach." *Id.* at 541, 115 S.Ct. 1043. The existence of one putative tortfeasor who engaged in activity substantially related to traditional maritime activity, Great Lakes, was held to be sufficient to create admiralty jurisdiction even if the city's non-maritime activities were also taken into consideration. *Id.* at 540, 115 S.Ct. 1043.

The *Taghadomi* court applied the substantial relationship test as set forth in *Grubart* and concluded that because the defendant Coast Guard's search-and-rescue operation showed a substantial relationship to traditional maritime activity, all the plaintiffs' claims fell within admiralty jurisdiction. 401 F.3d at 1087. Reading *Grubart* and *Taghadomi* together, it appears that to satisfy the substantial relationship test for any of Plaintiff's claims in this case, all that is required is that one of the alleged tortfeasors was engaged in a traditional maritime activity and that such activity is claimed to have been a proximate cause of the incident.

The County Defendants argue that substantial relationship test is not met because the alleged non-enforcement of the Maui Fixed Price Rule has nothing to do with traditional maritime activity. County Defendants cite *Jada Yacht Charters, Ltd. v. Trans Hawaiian Services*, 854 F.Supp. 698 (D.Haw.1994), to argue that the Court does not have admiralty jurisdiction over them. In *Jada*, the court held that there was no admiralty jurisdiction over a claim involving a fight on the dock between two cruise passengers who had become intoxicated while on board the ship. *Id.* at 701. The *Jada* court relied on a three-factor test set forth by the Ninth Circuit in *Delta Country Ventures, Inc. v. Magana*, 986 F.2d 1260 (9th Cir.1993). The three factors used for determining what constitutes traditional maritime activities included: (1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; and (3) the types of vehicle and instrumentalities involved. *See Jada*, 854 F.Supp. at 700 (citing *Delta*, 986 F.2d at 1263). The County Defendants argue that the Court should follow *Jada* and decline to find admiralty jurisdiction because the injury occurred far away from the water, admiralty law should not be concerned with actions of persons on land, and apparently the *Jada* court would not consider causation and therefore would not examine

the " 'maritime' quality of the alcohol consumption."

The Ninth Circuit's three-factor test in *Delta* was abrogated by the Supreme Court's *Grubart* decision, which specifically overruled a similar multi-factor test from the Fifth Circuit. *See Taghadomi,* 401 F.3d at 1087 (citing *Grubart,* 513 U.S. at 544, 115 S.Ct. 1043). In addition, the *Jada* court declined to inquire into the causal link between the alcohol consumed on board and the assault, citing *Sisson* for the proposition that courts should not look at causation at the jurisdiction stage of proceedings. *Jada,* 854 F.Supp. at 700–701. The *Grubart* court has since clarified that proximate cause is part of the substantial relationship prong of the nexus test. *Grubart,* 513 U.S. at 541, 115 S.Ct. 1043. The Court questions the continuing viability of *Jada* because it relied upon *Delta*'s three-factor approach. Instead, the proper approach is the one articulated by *Grubart* that "the substantial relationship test is satisfied when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." *Id.* Moreover, when rejecting the multi-factored approach, the *Grubart* court dismissed the argument that it would be odd or undesirable for land-based parties to be subject to admiralty jurisdiction, stating, "Congress has already made the judgment, in the Extension Act, that a land-based victim may properly be subject to admiralty jurisdiction. Surely a land-based joint tortfeasor has no claim to supposedly more favorable treatment." *Id.* at 545, 115 S.Ct. 1043.

██ The Court applies the substantial relationship test as articulated by *Grubart* rather than the test applied by *Jada.* In this Court's June 29, 2007 Order, 526 F.Supp.2d 1135 in the instant case, the Court concluded that alleged tortfeasors

3090, Inc. and Maui Dive Shop satisfied the second prong of the nexus test because "[o]perating cruise ship tours for profit are related to traditional maritime activities of transporting persons [on navigable waters] for commercial purposes." June 29, 2007 Order at 1140. The activity of operating commercial cruise ship tours is alleged to have been a proximate cause of Plaintiff's injuries; she has sued 3090, Inc. and Maui Dive Shop for activities conducted while operating a tour on the Alii Nui. Even if the County Defendants' activities are land-based, like the city of Chicago in *Grubart,* consideration of such activity does not defeat admiralty jurisdiction when another tortfeasor was engaged in activity substantially related to a traditional maritime activity and such activity is claimed to be a proximate cause of Plaintiff's injury.

The Court concludes that the locality test and both prongs of the nexus test are satisfied. Thus, the Court finds that it has admiralty jurisdiction over Plaintiff's claims against the County Defendants for negligently failing to enforce the Maui Fixed Price Rule.

### B. *Supplemental Jurisdiction*

Because the Court concludes that it has admiralty jurisdiction over the Plaintiff's claims against the County Defendants, it is unnecessary to determine whether supplemental jurisdiction would apply.

### III. The County Defendants' Liability for Negligence

██ The County Defendants argue that they did not have a duty to enforce the Maui Fixed Price Rule and cannot be held liable for negligence. "When jurisdiction is maritime, the claims are determined under general principles of maritime negligence rather than common law negligence. However, the elements for a maritime negligence cause of action are defined similar-

ly to the common law: a duty, a breach of the duty, proximate cause, and damages." *See Prince v. Thomas,* 25 F.Supp.2d 1045, 1047 (N.D.Cal.1997) (citing *Pope and Talbot v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Schoenbaum, Admiralty and Maritime Law, 2nd Ed.1994, pp. 156–57).

■ "Federal admiralty law preempts state law only if the state law 'contravene[s] any acts of Congress, ... work[s] any prejudice to the characteristic features of the maritime law, or interfere[s] with its proper harmony and uniformity in its international and interstate relations.'" *In re Exxon Valdez,* 484 F.3d 1098, 1101 (9th Cir.2007) (quoting *Askew v. American Waterways Operators, Inc.,* 411 U.S. 325, 339, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973)). "To determine whether state law interferes with admiralty law, [t]he Supreme Court has adopted a balancing test that weighs state and federal interests on a case-by-case basis." *In re Exxon Valdez,* 484 F.3d at 1101 (citing *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 210–15, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996)).

■ Federal admiralty law holds that counties and municipalities can be held liable for the negligence of their employees. *See Northern Insurance Co. of New York v. Chatham County, Georgia,* 547 U.S. 189, 195–96, 126 S.Ct. 1689, 1694, 164 L.Ed.2d 367 (2006)(holding that counties can be held liable for torts under admiralty law); *Workman v. Mayor, Etc. of New York,* 179 U.S. 552, 570, 21 S.Ct. 212, 219, 45 L.Ed. 314 (1900)(holding that municipalities can be held liable for torts under admiralty law). In *Workman,* the circuit court of appeals had determined that under New York law, when a municipality performs government rather than corporate functions, it is immune from liability. *See* 179 U.S. at 557, 21 S.Ct. at 214. The court in *Workman* observed that application of state law interfered with "the prin-

ciples of the general maritime law giving relief for every character of maritime tort where the wrongdoer is subject to the jurisdiction of admiralty courts ..." *Id.* at 558, 21 S.Ct. 212. Here, unlike in *Workman,* Hawaii law does not provide immunity to its counties or other governmental subdivisions. In Hawaii, the state government, its political subdivisions, and employees can be held accountable in tort in the same manner and to the same extent as a private individual under like circumstances. Haw.Rev.Stat. § 662–2; *see also Cootey v. Sun Investment, Inc.,* 68 Haw. 480, 483, 718 P.2d 1086, 1090 (Haw.1986). Application of state law in the instant case does not conflict with admiralty law. Furthermore, the state has a strong interest in applying its own test for governmental tort liability to ensure that its governmental entities and employees can discern the standard of care to which they must adhere. The Court's research has not produced admiralty law principles or guidance on how to address tort liability for local government entities and officials, so the federal interest in the application of admiralty law principles in this area is slight. In sum, the application of state law regarding governmental tort liability does not interfere with admiralty law, and the state's interests in applying its law outweighs the federal interest in creating an admiralty-specific standard. The Court will thus apply state law concepts of governmental tort liability to Plaintiff's negligence claim against the County Defendants.

■ As with any analysis for negligence by a putative tortfeasor, the existence of a duty owed by the government entity to the injured person is required. *See Cootey,* 68 Haw. at 484, 718 P.2d 1086. "In determining whether a duty is owed by the County to [the plaintiff], our task is to balance the policy considerations support-

ing recovery by the injured party against those favoring a limitation of the County's liability." *Id.* (citing *First Insurance Co. of Hawaii v. International Harvester Co.*, 66 Haw. 185, 189, 659 P.2d 64, 67–68 (Haw. 1983)). Furthermore, "whether a duty of care owed by the government tortfeasor to the injured party should be determined by an analysis of legislative intent of the applicable statute or ordinance." *Cootey*, 68 Haw. at 485, 718 P.2d 1086.

Plaintiff argues that the applicable statute is Haw.Rev.Stat. § 281–78.5(b), which provides, "The liquor commission shall adopt rules pursuant to chapter 91 to prohibit specific liquor promotion practices which promote excessive consumption of liquor." This statute directs the liquor commission to promulgate rules that prohibit excessive consumption of liquor, but appears to leave to the discretion of each liquor commission the scope, specific provisions, and enforcement of the rules. It would appear consistent for the county liquor commission to adopt a rule that targets fixed-price "happy hours" or promotions of "all you can drink" contests, but allows the commission the discretion to create certain exceptions or define the scope of the rule. Plaintiff also cites Haw. Rev.Stat. § 281–17(a)(13), which provides, "The liquor commission, within its own county, shall have the sole jurisdiction, power, authority, and discretion, subject only to this chapter: .... To prescribe, by rule, the circumstances and penalty for the unauthorized manufacturing or selling of any liquor." The provision expressly gives the commission the sole *authority* and *discretion* to determine which circumstances and licensees would be covered under a rule like the Maui Fixed Price Rule or under which circumstances it will enforce the Rule. Thus, the intent of the legislature does not appear to command that the Maui Fixed Price Rule be promulgated in its exact form or be enforced against 3090, Inc.

"Duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." *Johnston v. KFC National Management Co.*, 71 Haw. 229, 232, 788 P.2d 159, 161 (Haw.1990) (citation omitted).

In *Ono v. Applegate*, the Hawaii Supreme Court imposed a common law duty on commercial suppliers of alcohol to third parties injured by intoxicated drivers in the absence of direct legislative action. 62 Haw. 131, 134, 612 P.2d 533, 537 (Haw. 1980). The court concluded that duty could be imposed because the alcohol supplier violated a state liquor control law, and because judicial and legislative trends leaned toward imposing a duty on tavern owners throughout the country. *Id.* at 134–35, 612 P.2d at 537–38.

By contrast, the same court declined to impose a duty upon a social host or an employer that served alcohol to an individual who, as a result, injured a third party in an automobile accident. *Johnston*, 71 Haw. at 238, 788 P.2d at 164. After evaluating national legislative and judicial trends, economic factors, and the potential for increased litigation, the court decided that it would not impose a new duty on social hosts or employers that served alcohol. *Id.* at 234–38, 788 P.2d at 162–64.

The issue here is whether the Court should create a common law duty for the County to enforce its liquor rules, when an individual served alcohol in alleged violation of those rules injures a third party in an automobile accident. The main policy concern of defining the County's duty so broadly is that the County would be exposed to unmanageable and unpredictable liability, which would inhibit and interfere with the County's promulgation and enforcement of beneficial rules and thus hurt the public's interest. *See Cootey*, 68 Haw.

at 484, 718 P.2d at 1090. In *Cootey* the court declined to find a duty owed by the defendant Hawaii County to homeowners to ensure that the development of an adjoining subdivision, approved by the County, did not create a risk of flooding. *Id.* at 486, 718 P.2d at 1091. The court stated that holding the County liable for failing to discover the error in the subdivision plans,

> "would, in effect, be impermissibly reallocating the County's resources, reordering its priorities, and setting policies that more rightly belongs to the legislative body of the County. Further, the exposure to such liability would unduly lengthen the permit process, or could very well dissuade the County from enacting rules, regulations and laws applicable to proposed subdivisions and intended for the protection and welfare of the public, a result contrary to the public interest."

*Id.* (citations omitted).

The reasoning of the Hawaii Supreme Court is in accord with the argument articulated by American Jurisprudence Second on Municipal, County, School, and State Tort Liability § 173:

> Generally, in the absence of statutory provision, a municipal corporation is not liable in tort for a failure to enact or enforce ordinances. It is reasoned that to impose liability on municipalities for the failure to enact or enforce ordinances would discourage the enactment of ordinances providing for the welfare of their citizens out of fear that their failure to zealously enforce ordinances would open the floodgates of litigation; such liability would constitute an unacceptable interference with government's ability to govern. Thus, municipal corporations are not insurers of property within their corporate limits by reason of the neglect or refusal of their officers and agents to enforce ordinances, nor are governmental agencies liable for their failure to investigate or enforce violations of ordinances.

In the case at bar, exposure to liability for failure to enforce its liquor rules in every instance may discourage the liquor commission from promulgating socially beneficial rules, such as the Maui Fixed Price Rule. This policy concern favors allowing the County and its Commissioners to prioritize their limited resources and target their rules and enforcement in the manner they deem the most beneficial to the welfare of the County. If the County Defendants thought that it would be a more effective policy to focus enforcement on happy hours at bars that attract many people than a whale-watching cruise that served champagne, the Court does not think it is wise to chill the discretionary enforcement decisions by the County, especially when such discretion is vested in the liquor commission by its originating statute. Nor is it the Court's place to assume the legislative function of reallocating the County's resources and reordering its priorities by holding the County liable for failing to enforce one of its liquor Rules in a particular instance. Imposing a duty on the County Defendants would create liability anytime the liquor commission or any agency fails to enforce a law that involves public safety. Such liability would discourage counties and other governing bodies from creating rules to benefit public safety and this would ultimately harm the public's well being.

Plaintiff also argues that the County did not merely fail to enforce a rule, but one of its liquor inspectors affirmatively told Jeff Strahn that the Maui liquor rules did not bar 3090, Inc. from including liquor within the price of a ticket. Plaintiff argues that this action of assuring 3090, Inc. about its ticket pricing practice increased the risk of harm to the public, by essentially telling

3090, Inc. to serve all the alcohol it wanted. The United States District Court has held, "Under Hawaii law, the government is only liable for enforcement of the law if its actions make plaintiffs' situation worse than inaction would have. Only where the performance of a government function has increased the risk of harm and there is negligence in providing protection against the enhanced danger is liability imposed." *Hanakahi v. United States*, 325 F.Supp.2d 1125, 1132 (D.Haw.2002)(citing *Freitas v. City and County of Honolulu*, 58 Haw. 587, 590, 574 P.2d 529 (Haw.1978))(internal quotes omitted). In *Hanakahi*, the court held that a United States law enforcement agency on a military base did not have a duty to prevent an underage soldier without a license, vehicle title, or insurance from driving while intoxicated. 325 F.Supp.2d at 1132–33. The *Hanakahi* court pointed out that the Government did not do anything to increase the danger of the situation. In a similar fashion, the Hawaii Supreme Court declined to impose a duty upon a public employee counselor to prevent the suicide of a noncustodial adult, concluding,

> Where a duty assigned to a public employee is ineptly performed, but the risk of harm to individuals in the community is not increased thereby as compared to that which would have existed had no governmental action been attempted, there may be strong policy considerations against recognizing governmental tort liability for the harms which the public employee failed to prevent.

*Lee v. Corregedore*, 83 Hawaiʻi 154, 172, 925 P.2d 324, 342 (Haw.1996).

Here, Plaintiff argues that *Hanakahi* is distinguishable because the County increased the danger by allowing the crew of the Alii Nui to serve an unlimited amount of alcohol in violation of the Maui Fixed Price Rule. The County Defendants object that the liquor inspector never told Strahn that 3090, Inc. could serve all the alcohol they wanted, but simply that it could include in the price of one ticket the meal, champagne, and the snorkeling or whale watching activities. Such an assurance about ticket pricing did not compel 3090, Inc. to serve an unlimited amount of alcohol within a fixed period of time.[10] The County Defendants' failure to enforce the Maui Fixed Price Rule or its erroneous assurance to Strahn that the ticket pricing policy was legal did not place the public in any greater danger than had the liquor commission never passed the Maui Fixed Price Rule at all.

The legislature's intent, the policy considerations against interfering with county governance, and the fact that the County Defendants did not increase the danger of the situation all support a finding that no duty to enforce the Maui Fixed Price Rule against 3090, Inc. existed.

The Court concludes that the County Defendants did not have a duty to enforce the Maui Fixed Price Rule against 3090, Inc. on February 13, 2004. Accordingly, the Court GRANTS the County Defendants' Motion for Summary Judgment on the issue of their liability under Plaintiff's Fourth Amended Complaint.

## IV. Qualified Immunity

Defendants Silva and Pagan, in their individual capacities, assert that they are entitled to qualified immunity on Plaintiff's negligence claim against them.

The Court has not identified substantive admiralty law that addresses the issue of qualified immunity for local government

---

**10.** Moreover, the County Defendants argued at the hearing that at all times there was another liquor law in effect that prohibits all licensees from over-serving alcohol.

officials. As stated above, in the absence of applicable admiralty law, the Court may apply state substantive law to matters of local concern, so long as the application of state law does not interfere with the uniformity of federal admiralty law. *See Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1422 (9th Cir.1990). Moreover, the Court finds application of the non-maritime federal standards for evaluating qualified immunity of government officials inapplicable in this case because Silva and Pagan are not federal officials and the claims against them arises under tort, not civil rights jurisprudence. *See Black v. City & County of Honolulu*, 112 F.Supp.2d 1041, 1049 n. 5 (D.Haw.2000). The Federal Tort Claims Act addresses tort immunity, but only for federal government officials. 28 U.S.C. § 1346 et seq. The federal "discretionary function" analysis addresses qualified immunity of state and local government officials, but only in the context of civil rights actions such as those brought under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Court has not uncovered any conflicting admiralty law on the issue of qualified immunity and federal law is inapplicable. The state, on the other hand, has a strong interest in defining the standards for applying qualified immunity for its government officials. Therefore, the Court finds that it is proper in this case to consider Hawaii's law regarding qualified immunity to "fill in the interstices of substantive maritime law." *See Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363, 366 (9th Cir.1992).

Under Hawaii law, "a non-judicial government official acting in the performance of a public duty enjoys the protection of immunity from liability from tortious conduct unless a plaintiff provides clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose." *Wong v. City & County of Honolulu*, 333 F.Supp.2d 942, 958 (D.Haw.2004); *Medeiros v. Kondo*, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (Haw. 1974). Analogous to qualified immunity, this protection is called a "qualified or conditional privilege" under Hawaii law. *Towse v. State of Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (Haw.1982). The existence or absence of malice is generally a question for the jury. *Runnels v. Okamoto*, 56 Haw. 1, 5, 525 P.2d 1125, 1129 (Haw.1974). However, when the existence or absence of malice is demonstrated to the court via uncontroverted affidavits or depositions, the court may rule on the existence or absence of malice as a matter of law. *Id.*

To determine whether Silva and Pagan acted with malice, Plaintiff argues that the applicable standard is the "reasonable man" standard articulated in *Towse*, 64 Haw. at 633, 647 P.2d at 703.[11] Nevertheless, *Towse* involved a defamation case, and the Court notes that there are no cases applying the "reasonable man" test to non-defamation torts by government officials. *See Edenfield v. Estate of Willets*, 2006 WL 1041724, at *12 (D.Haw. 2006)("This court does not read *Towse* as requiring application of the 'reasonable man' test to the facts of this nondefamation case. To hold otherwise would effectively remove the 'malice' requirement and run contrary to the Hawaii Supreme

---

11. For defamation cases, the *Towse* court explained, "in the instance where malice is alleged to extinguish a qualified privilege, defendant is required to act as a reasonable man under the circumstances, with due regard to the strength of his belief, the grounds that he has to support it, and the importance of conveying the information." 64 Haw. at 633, 647 P.2d at 703.

Court's admonition that only the most guilty of officials are liable for their tortious acts"). The Court concludes that the 'reasonable man' standard is inapplicable to determining malice in cases involving torts other than defamation. The applicable standard is whether Plaintiffs have met their burden of proving that the officers were motivated by malice and not by an otherwise proper purpose.

▓ Here, Silva and Pagan submit declarations stating that their decision not to enforce the Maui Fixed Price Rule was not motivated by malice, but by the desire to treat cruise vessel licensees in the same way as similarly situated licensees that include food and alcohol in the price of a ticket. Plaintiff does not produce any evidence that tends to prove that Silva and Pagan were motivated by improper purposes. Plaintiff merely argues that they acted unreasonably when they refused to enforce the Maui Fixed Price Rule against cruise vessels, including 3090, Inc. However, the test for malice in non-defamation cases is not unreasonableness. The objective reasonableness of their beliefs is not relevant to the core inquiry—whether Silva and Pagan were subjectively motivated by improper purposes. The Hawaii Supreme Court intended to limit liability to the most guilty officials by requiring a higher standard of proof of the plaintiff. *See Medeiros,* 55 Haw. at 504, 522 P.2d at 1272. Here, Plaintiff has failed to introduce any evidence that Silva and Pagan were motivated by improper purposes, acted dishonestly, or in bad faith. Because Plaintiff does not demonstrate how she would meet the burden at trial of demonstrating by clear and convincing evidence that Silva and Pagan were motivated by malice, Defendants Silva and Pagan are entitled to summary judgment on Plaintiff's negligence claim against them.

Even if the Court were to apply federal law, Silva and Pagan would be entitled to

qualified immunity. To determine whether a government official is entitled to qualified immunity in civil rights cases the initial inquiry is whether the official's conduct violated any constitutional rights or rights under federal statutory law. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (1982). Here, no federal law is alleged to have been violated. Generally, there is no affirmative right under the United States Constitution to governmental aid, "even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, one exception to the general rule is the "danger creation" exception. To prevail under the danger creation exception, a plaintiff must first show that "the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Johnson v. City of Seattle,* 474 F.3d 634, 639 (9th Cir.2007)(quoting *DeShaney,* 489 U.S. at 197, 109 S.Ct. 998).

In *Johnson,* the plaintiffs sued the city and its officials for injuries sustained from drunken crowds at a Mardi Gras celebration because the city had decided to switch from a more aggressive crowd-control plan to a more passive one. The Ninth Circuit held that the plaintiffs failed to offer evidence that the municipality and officials engaged in affirmative conduct that enhanced the danger the plaintiffs exposed themselves to by participating in the Mardi Gras celebration. *Johnson,* 474 F.3d at 641. The fact that the city could have implemented a plan that may have prevented the injuries did not constitute affirmative conduct that placed the plaintiffs in

danger because it placed the plaintiffs in "no worse position than that in which [they] would have been had [the defendants] not acted at all." *Id.* (quoting *DeShaney,* 489 U.S. at 201, 109 S.Ct. 998). Here, Silva and Pagan's decision not to enforce the Maui Fixed Price Rule against 3090, Inc. did not place the Plaintiff in a worse position than she would have been had they not passed the Maui Fixed Price Rule at all. Without the Rule, 3090, Inc. would have been able to include alcohol in the price of their ticket and the result would not have been different for the plaintiff.

Nor does the alleged assurance to Strahn by the liquor commission inspector that 3090, Inc.'s ticket pricing policy was legal constitute affirmative conduct. The Third Circuit has recently held that "mere assurance cannot form the basis of a state-created danger claim." *Ye v. United States,* 484 F.3d 634, 640 (3d Cir.2007). The court in *Ye* found that state-created danger liability did not attach when a government-employed physician unreasonably assured a patient that he was fine when he was in fact suffering from a heart attack. *Id.* at 643. The court reasoned that state-created danger liability could not lie because the defendant's assurances did not restrict the plaintiff's freedom to act on his own behalf or deprive him of his liberty. *Id.* at 641. In a similar fashion, the liquor inspector's assurance that 3090 Inc.'s ticketing practice did not violate the Maui Fixed Price Rule did not deprive anyone of the freedom to act on his or her own behalf. The assurance of a liquor inspector did not give rise to a state-created danger claim. Thus, Silva and Pagan are entitled to qualified immunity as a matter of federal law for their failure to enforce the Maui Fixed Price Rule as well as their inspector's alleged assurance to 3090, Inc. that the ticketing practice did not violate the Maui Fixed Price Rule.

The Court finds that Defendants Silva and Pagan are entitled to a qualified or conditional privilege under Hawaii law or qualified immunity under federal law. The Court GRANTS Defendants Silva and Pagan's Motion for Summary Judgment as to Plaintiff Fourth Amended Complaint.

## V. Defendant 3090, Inc.'s Motion to Strike Jury

Defendant 3090, Inc. moves this Court to strike the jury in the instant case on the basis that the action solely involves admiralty claims.

■■■ It is uncontested that there is no right to a trial by jury for claims based in admiralty law. "The Seventh Amendment preserves a party's right to a jury trial as it existed at common law.... Since there was no common law right to a jury trial in admiralty cases, the Seventh Amendment does not apply to suits that invoke only a federal court's admiralty jurisdiction." *Craig v. Atlantic Richfield Co.,* 19 F.3d 472, 476 (9th Cir.1994)(citing *Waring v. Clarke,* 46 U.S. (5 How.) 441, 460, 12 L.Ed. 226 (1847)).

It is further uncontested that in Plaintiff's Fourth Amended Complaint, Plaintiff's sole basis for asserting the jurisdiction of the federal courts is admiralty. Plaintiff and all Defendants are residents of Hawaii, so diversity jurisdiction does not apply. Nor are any other independent bases of federal jurisdiction asserted. Plaintiff has filed a Statement of No Position regarding Defendant 3090, Inc.'s Motion to Strike Jury. At the hearing, Plaintiff, through her counsel, reiterated that she does not oppose Defendant 3090, Inc.'s Motion to Strike Jury. Defendant Maui Dive Shop may not assert a right to a jury with regard to claims brought by Plaintiff's Fourth Amended Complaint. Moreover, Defendant Maui Dive Shop has reached a settlement with Plaintiff and it was agreed

at the hearing that it will be dismissed forthwith as a party.

The Court has ruled that Defendants Silva and Pagan are entitled to summary judgment and therefore their counterclaim for contribution against Sabatino is moot. Likewise, the Court has determined that the Maui County is entitled to summary judgment and not subject to liability under Plaintiff's fourth Amended Complaint.[12]

All remaining parties concurred at the hearing that the remaining claims in this case are based solely on admiralty jurisdiction and are to be tried by the Court without a jury. Accordingly, the Court GRANTS Defendant 3090, Inc.'s Motion to Strike Jury.

### CONCLUSION

For all the foregoing reasons, the Court:

(1) GRANTS Defendants Maui County, Franklyn L. Silva, and Wayne M. Pagan's Motion for Summary Judgment on Plaintiff's Fourth Amended Complaint because the County Defendants did not have a duty to enforce the Maui Fixed Price Rule against 3090, Inc. on February 13, 2004, and because Defendants Silva and Pagan are entitled to qualified immunity; and

(2) GRANTS Defendant 3090, Inc.'s Motion to Strike Jury because the sole basis for jurisdiction of Plaintiff's Complaint is admiralty, and no right to a jury trial attaches to claims based in admiralty.

All of Plaintiff's claims against Defendants Maui County, Franklyn Silva, and Wayne Pagan in their official and individual capacities are dismissed. Silva and Pagan's counter-claim for contribution against Carol Ann Sabatino is dismissed as moot. Silva and Pagan's cross-claim for contribution in their individual capacities

against Sabatino, Maui Dive Shop, and 3090, Inc. is dismissed as moot. Maui County, Silva, and Pagan's cross-claim for contribution in their official capacities against Sabatino, Maui Dive Shop, and 3090, Inc. is dismissed as moot.

IT IS SO ORDERED.

---

12. For the same reasons, the County Defendants' two remaining cross-claims for contribution/indemnity(in their official and individual capacities) against Sabatino, Maui Dive Shop, and 3090, Inc. are dismissed as moot. The cross-claimants had previously dismissed their cross-claims against Wallach via Notice pursuant to Fed.R.Civ.P. 41(c).